RALPH GARDNER v. R. C. BLACK.

(Filed 22 May, 1940.)

1. **Animals § 2—**

The owner or person having charge of domestic animals is liable for injury or damage caused by such animals while running at large only if the animals are at large with his knowledge and consent or at his will or their escape is due to negligence on his part.

2. **Same—**

The person having charge of domestic animals is guilty of negligence in permitting them to escape only if he fails to exercise ordinary care and the foresight of a prudent person in keeping them in restraint, the ordinary rules of negligence being applicable.

3. **Same—Fact that domestic animals are at large raises no presumption that owner permits them to run at large.**

The provision of C. S., 1849, that any person who permits his livestock to run at large in territory in which the stock law is applicable shall be guilty of a misdemeanor, implies knowledge, consent or willingness on the part of the owner that the animals be at large, or negligence equivalent thereto, and the mere fact that animals are at large does not raise the presumption that the owner permits them to run at large, nor does the doctrine of *res ipsa loquitur* apply upon the establishment of the fact that the animals are found at large.

4. **Same—Evidence held insufficient to show that the escape of defendant's mule was due to negligence, or that it was at large with defendant's knowledge and consent or at his will.**

Plaintiff instituted this action to recover for injury to his person and damages to his car resulting when his car and a mule owned by defendant collided on a public highway within territory subject to the stock law. Plaintiff alleged that defendant negligently permitted the mule to run at large but plaintiff's only evidence upon the issue was to the effect that the mule was at large and that defendant stated he could not help the mule being at large and that he did not know it was out. Defendant's

evidence was to the effect that he kept his mules in the barn and within a wire enclosure attached to the barn, that the fence was high enough to keep the mules from getting out, that the night before the accident no defect was discovered in the fence, and that the morning after the mules got out the top strand of wire had been broken. *Held:* Defendant's evidence did not contradict plaintiff's evidence, but was in explanation and corroboration thereof, and the evidence fails to show that the mule causing the accident was at large with defendant's knowledge or consent, or at his will, or that its escape was due to any negligence on his part, and his motion to nonsuit should have been allowed.

**5. Appeal and Error § 41—**

Where it is determined that defendant's motion to nonsuit on the issue of negligence should have been granted, defendant's exception to the refusal of the court to submit an issue of contributory negligence becomes immaterial and need not be considered.

CLARKSON, J., dissents.

APPEAL by defendant from *Phillips, J.,* at 30 October, 1939, Regular Term, of MECKLENBURG.

Civil action for recovery of damages to person and property resulting from alleged actionable negligence.

Plaintiff, resident of Mecklenburg, alleges that on the night of 1 December, 1938, he was injured and suffered personal and property damage as the result of a collision between his automobile and a mule of defendant, which was negligently permitted by defendant to run at large on the highway within the limits of Mecklenburg County and Charlotte Township and in violation of section 1849 of the Consolidated Statutes of North Carolina.

Defendant denies the material allegations of the complaint, and pleads the contributory negligence of plaintiff. And, by way of counterclaim, defendant sets up cross action for recovery of the value of the mule killed in the collision with plaintiff's automobile as the result of alleged actionable negligence of plaintiff.

On trial below plaintiff in behalf of himself testified that:. "On December 1, 1938, I had been to see a friend of mine about half a mile down the road from Mr. Black's on the Plaza Road. It was a clear, cold night. I was by myself. The road was hard surfaced and practically straight. I was coming to Charlotte. I was driving along probably between 40 and 45 miles an hour on the right-hand side of the pavement and all of a sudden I saw this mule start to lope across the highway and I slid into the other lane of the highway to my left. I was sliding my tires with my brakes on when the mule ran into the side of my car. It ran into the right-hand side of the car. The mule came from a little narrow field between two houses. When I first saw the mule, he was at the edge of the highway, running as hard as he could. There were two

mules.  The mule that ran into me was probably 15 or 20 feet from my car when I first saw him.  My lights did not show the field, they just showed the highway and the edge of the highway. . . . I talked to Mr. Black about the accident and he said as far as he was concerned it was just an accident and he would do nothing; that it was his mule; that he couldn't help it being out and that he didn't know that it was out. . . . I skidded my wheels every bit of ten feet before the impact occurred, possible more than that."

Defendant, reserving exception to the refusal of the court to grant his motion for judgment as in case of nonsuit, offered evidence as follows: R. C. Black, Jr., testified: "I am my father's assistant on the farm. The mules were kept in a horse barn which has two stalls on each side and a hall in the middle and a crib on each side and a gate at the back, a five strand barbed wire fence makes a square enclosure around the barn.  The fence is strung on cedar posts.  The fence was in good condition on December 1, 1938, when the mules were put in the lot, the wires were up and nailed to the posts and the gate was closed. . . . I investigated to see how it got out and found that they had broken a top strand of the wire.  I do not know how long it had been broken. . . . There was nothing wrong with the doors to the barn.  The doors to the barn were open so that the mules might run out into the lot.  The mules are not confined to the stable but are enclosed inside the fence.  The fence was approximately 4½ feet high.  I have never seen a mule and I have never owned one that jumped the fence.  When the top strand was broken, the fence was about four feet high."

R. C. Black, Sr., in behalf of himself, testified in part: "Immediately after the accident . . . I got up and went down there and the mule was lying there, dead.  There were two tire marks on the highway approximately 50 feet long.  I didn't measure them.  They started approximately 50 feet from where the automobile was standing. . . . At night my mules are confined in the lot and in the barn, the doors to the stables are never closed but the mules are confined by the fence which is an ordinary barbed wire fence put up on cedar posts, five strands high, . . . approximately 5 feet high.  The next morning I went to the barn lot and the gate was closed.  I inspected the wire fence and at the corner I found that part of the wire was down.  I had been out to the barn lot the afternoon before the accident.  At that time the condition of the fence was all right.  I didn't notice anything wrong.  I did not especially examine the wire fence that afternoon.  I don't close the barn doors at night but sometimes use the doors to catch a mule to harness it or something like that. . . . There was no plank above the wire on the fence. . . . I do not know how old the barbed wire fence is.  It has been there several years but has been repaired several times.  All five strands are barbed wire.  We repair it whenever it needs it."

Defendant's motion for judgment as of nonsuit renewed at the close of all the evidence was denied. Exception.

The case was submitted to the jury on these issues, which the jury answered as indicated:

"1. Was the plaintiff injured and his car damaged by the negligence of the defendant, as alleged in the complaint? Answer: 'Yes.'

"2. What sum, if any, is the plaintiff entitled to recover of the defendant? Answer: '$100.00.' "

Defendant tendered other issues relating to the contributory negligence of plaintiff, the negligence of plaintiff and damages as alleged in defendant's counterclaim, and excepted to refusal of the court to submit same.

From judgment on verdict defendant appeals to Supreme Court, and assigns error.

*G. T. Carswell and Joe W. Ervin for plaintiff, appellee.*
*McDougle & Ervin for defendant, appellant.*

WINBORNE, J. Defendant assigns for error in the main the refusal of the court below to grant motion for judgment as in case of nonsuit. We are of opinion that upon all the evidence, taken in the light most favorable to plaintiff, the motion should have been allowed.

The liability of the owner of animals for permitting them to escape upon public highways, in case they do damage to travelers or others lawfully thereon, rests upon the question whether the keeper is guilty of negligence in permitting them to escape. In such case the same rule in regard to what is and what is not negligence obtains as ordinarily in other situations. It is the legal duty of a person having charge of animals to exercise ordinary care and the foresight of a prudent person in keeping them in restraint. *Lloyd v. Bowen,* 170 N. C., 216, 86 S. E., 797; 2 Am. Jur., 740, subject Animals, section 62.

In the present case there is no evidence tending to show that defendant failed in such duty.

Plaintiff contends, however, that it being unlawful to permit livestock to run at large in Mecklenburg County, the very fact that defendant's mules were there running at large upon a public highway is sufficient in and of itself to establish a *prima facie* case of negligence on the part of defendant. The doctrine of *res ipsa loquitur* does not apply. And though the statute, C. S., 1849, upon which plaintiff relies, provides that "if any person shall allow his livestock to run at large within the limits of any county, township or district in which a stock law prevails or shall prevail pursuant to law, he shall be guilty of a misdemeanor, and fined not exceeding fifty dollars or imprisonment not exceeding thirty days," it does not provide that the mere fact that livestock is at large

raises a presumption that the owner permits same to run at large. Such a statute as this relating to allowing or permitting livestock to run at large "implies knowledge, consent, or willingness on the part of the owner that the animals be at large, or such negligent conduct as is equivalent thereto, but does not comprehend a case where, through some untoward circumstance, the owner is unable to watch and care for the animals in a particular instance, or where, notwithstanding the owner has taken precautions to restrain them, and is without fault or negligence, the animals escape from him. . . ." 3 C. J. S., 1231. 3 C. J., 180.

In the instant case the evidence for plaintiff fails to show that the mules of defendant were at large with his knowledge and consent, or at his will, or that their escape was due to any negligence on his part. The only evidence in regard thereto appearing at the close of plaintiff's evidence, other than the fact that the mules were at large, is the statement of plaintiff that defendant said "that he couldn't help it (the mule) being out and that he didn't know that it was out." Thus plaintiff's evidence exculpates defendant of the allegation that he negligently permitted the mule to run at large. Defendant's evidence merely enlarges upon and explains and corroborates the evidence of plaintiff.

In the light of the decision here made, it is unnecessary to consider the question of refusal to submit issue of contributory negligence, which is the only other assignment brought forward in brief filed by defendant.

The judgment below is
Reversed.

CLARKSON, J., dissents.