Jerry L. ENDRESEN, Appellant
(Plaintiff below),

v.

David G. ALLEN and Marilyn Allen,
Appellees (Defendants below).

No. 4797.

Supreme Court of Wyoming.

Feb. 17, 1978.

Robert Jerry Hand, Hand, Hand & Hand, P. C., Casper, for appellant.

Cameron Walker and William S. Bon, Schwartz, Bon & McCrary, Casper, for appellees.

Before GUTHRIE, C. J., and McCLINTOCK, RAPER, THOMAS and ROSE, JJ.

McCLINTOCK, Justice.

Jerry L. Endresen, hereinafter referred to as plaintiff or by name, appeals from summary judgment entered in the district court of Natrona County, Wyoming, dismissing his action against David G. Allen and Marilyn Allen, hereinafter referred to as defendants or by name. Plaintiff claimed that defendants had negligently allowed a dog owned by them to be at large upon the streets of Casper, in violation of the applicable city ordinance, and through negligence the animal ran into the public street on which plaintiff was lawfully operating a motor vehicle, and caused an accident, resulting in injury to plaintiff and damage to his vehicle. In holding that summary judgment should be granted the trial court took the view that the accident was not foreseeable and that plaintiff was not a member of the class sought to be protected by the Casper leash law ordinance. We hold that defendants were not entitled to judgment as a matter of law and therefore reverse and remand the proceedings for trial upon the factual issues.

The pertinent facts were developed through depositions of the plaintiff and Mrs. Allen and are as follows:

Defendants owned a two-year-old dog, a mixed golden retriever and springer spaniel, gold in color and weighing between 80 and 90 pounds. Prior to the accident they had knowledge that the dog could and would escape from the back yard of their house by jumping over the gate and had observed their dog chasing cars on several occasions. There was no evidence that the dog had been observed chasing motorcycles or bicycles. After defendants were advised by a city dog catcher that they should keep their dog tied up, they developed the habit of tying the animal up in the back yard.

On the morning of the accident, David Allen tied up the dog and left for work. Later that morning, Allen's wife, Marilyn Allen, untied the dog so that she could water part of the yard, but took no steps to secure the animal. At or about 11:00 a. m. that day, plaintiff was riding his motorcycle (a trail bike) in a northerly direction on

Lincoln Street on his way to work when he hit a blondish-brown golden retriever which was chasing him. The dog got in front of the motorcycle and caused it to flip over. At the time of the accident, Mrs. Allen was working inside the house, and upon hearing a screech and a yelp from an animal, she immediately ran outside where she saw plaintiff lying in the middle of the street with his left leg pinned under a motorcycle. The dog could not be found immediately after the accident and did not return home until approximately two hours later. Marilyn Allen stated in her deposition that another golden retriever ran loose in the neighborhood.

Plaintiff advances two theories in support of his claim for recovery: first, the common-law liability for negligence or failure to control defendants' dog, known by them to have a propensity to chase vehicles in an urban area; and second, violation of defendants' duty under the ordinance to keep their dog off a public street.

*Liability for Common-Law Negligence*

■ As said in 57 Am.Jur.2d, Negligence § 58, pp. 408–409:

"The probability of injury by one to the legally protected interests of another is the basis for the law's creation of a duty to avoid such injury, and foresight of harm lies at the foundation of the duty to use care and therefore of negligence. The broad test of negligence is what a reasonably prudent person would foresee and would do in the light of this foresight under the circumstances. Negligence is clearly relative in reference to the knowledge of the risk of injury to be apprehended. * * * The most common test of negligence, therefore, is whether the consequences of the alleged wrongful act were reasonably to be foreseen as injurious to others coming within the range of such acts."

In Prosser, Law of Torts, § 31, p. 146, it is said:

" * * * The idea of risk necessarily involves a recognizable danger, based upon some knowledge of the existing facts, and some reasonable belief that harm may follow. A risk is a danger which is apparent, or should be apparent, to one in the position of the actor. * * * "

Defendants cite 4 Am.Jur.2d, Animals § 114, p. 364 to the effect that at common law the owner had no absolute duty to keep a domestic animal from being loose and unattended on a highway,

"unless he has knowledge of vicious propensities of the animal *or unless he should reasonably have anticipated that injury would result from such a situation.* However, the later cases show a tendency, in the light of modern conditions of congested motor vehicle traffic on the highways, to stress the exception rather than the rule—that is, that the owner of the animal is liable if he could reasonably have anticipated that injury would result from the animal's being at large on the highway." (Emphasis added)

This statement and essentially the same statement in annotations in 140 A.L.R. 742, 743, and 59 A.L.R.2d 1328, 1333, are well supported by citation of case authority.

■ Defendants contend that the Allens could not be responsible unless Mrs. Allen could reasonably have foreseen that the dog would escape from the back yard, chase a vehicle (which it had been known to do), which vehicle was a motorcycle (which it had not been known to chase), and become involved in an accident, a process which they describe as tortured reasoning, stretching foreseeability beyond its breaking point. Citing *McCarthy v. Croker*, Wyo., 549 P.2d 323, 325 (1976), in which this court held that knowledge that defendant's dog had barked at and nipped at a neighbor's horses was not knowledge or notice that the dog would bite a man approaching the defendant's house,[1] it is argued that similarly, knowledge that the dog would chase cars was not

---

1. We said that "knowledge of the owner must be of the particular propensity which caused the injury."

sufficient notice that it would chase motorcycles.

The argument misses the point that we are not concerned with the vicious propensities of the dog but only whether defendants "could reasonably have anticipated that injury would result from the animal's being at large on the highway." The Allens knew of their dog's ability and proclivity to escape from the yard; they knew that it chased cars; they had been told by the animal warden that they should keep it tied. It is common knowledge that the mere presence of a dog or other animal upon a highway or street can be a serious distraction to, and even interference with, traffic; that they sometimes dart and sometimes amble into the traveled portion of the street, creating unwelcome and dangerous diversions. The statement in *Swearngin v. Sears Roebuck & Company*, 376 F.2d 637, 642 (10 Cir. 1967) is then pertinent:

"' * * * [I]t is generally held, regardless of whether the question of "foreseeability" is treated as a problem of "duty," "negligence," or "proximate cause," that it is not necessary that the defendant might or should have foreseen the likelihood of the particular injury or harm, the extent of the harm, or the manner in which it occurred, but that it is only necessary that he should have anticipated that some injury or harm might result from his conduct.' 100 A.L.R.2d 980; *Rowell v. City of Wichita*, 162 Kan. 294, 176 P.2d 590 (1947) and *Atherton v. Goodwin*, 163 Kan. 22, 180 P.2d 296 (1947) cited as authority."

"It is not a necessary element of negligence that one charged therewith should have been able to anticipate the precise injury sustained. Nor is it necessary that the injury to the plaintiff himself be foreseeable; it is sufficient that the act in question may in human probability produce harm to persons similarly situated." 57 Am.Jur.2d, Negligence § 59, p. 411.

It is said in *Thomas v. Williams*, 105 Ga.App. 321, 124 S.E.2d 409, 413 (1962) that,

"* * * what is reasonably to be foreseen is generally a question for the jury. * * * The question for the jury is whether danger should have been recognized by common experience, or by the special experience of the alleged wrongdoer, or by a person of ordinary prudence and foresight."

In *Darnold v. Voges*, 143 Cal.App.2d 230, 300 P.2d 255, 265 (1956), reh.den., hrg.den., it is said that "whether an event was foreseeable and whether it was the proximate cause of the injury are factual issues."

As said in 57 Am.Jur.2d, Negligence § 58, p. 411,

"* * * Negligence must be determined upon the facts as they appeared at the time, and not by a judgment from actual consequences which were not then to be apprehended by a prudent and competent man. *What was reasonably to be foreseen is generally a question for the jury.*" (Emphasis added)

We think that there was sufficient evidence of negligence to justify submission to the finder of the facts the question whether defendants should reasonably have anticipated that injury would result from their failure properly to secure the dog and whether they negligently failed properly to secure the dog.

*Liability Under the City Ordinance*

We also believe that the city ordinance is pertinent and eliminates any requirement of scienter, or knowledge of the propensities of the dog. It has been said in 4 Am.Jur.2d, Animals § 116, p. 367:

"To cope with the danger of animals running at large or unattended on public streets and highways, many states have enacted statutes, and many municipalities ordinances, making it unlawful for livestock or other animals to run at large generally or on the public streets or highways."

Such statutes or ordinances vary, some of them expressly imposing liability upon the owner of the offending animal which has been allowed to escape from control, while others merely declare it a criminal act to

allow the animal to run at large. Whatever the form of the statute, we take the majority view to be that knowledge of the animal's propensities is of no consequence in determining if there has been a violation of the statute. Thus it is said in an annotation in 142 A.L.R. 436, 437–438:

"Statutes imposing civil liability generally for injuries inflicted by dogs (or other animals), or for a specific class of such injuries, but not expressly referring to the matter of scienter, have usually been deemed to eliminate scienter as a condition of liability."

To the same effect is 4 Am.Jur.2d, Animals § 88, p. 335.

Section 5–23 of the Casper Code, 1975 Ed. provides as follows:

"It shall be unlawful for any person owning or having possession of any dog *to allow* his dog to be at large upon the streets, alleys, sidewalks, public grounds or private property, other than the property owned or occupied by the owner of the dog. Any dog on any of the above described areas of the city shall be considered to be at large in violation of this section unless it is under the actual control of the owner, or his agent or some member of his family over the age of five years." (Emphasis added.)

*Gray v. Clark*, 13 N.C.App. 160, 185 S.E.2d 314, 315 (1971), cert. den., is pertinent. The ordinance there made it unlawful for any dog owner to have within the city a dog which habitually or repeatedly chases, snaps at, attacks or barks at pedestrians, bicyclists or vehicles. The court said:

"* * * Nothing in the Section restricts its application to those dog owners who know or in the exercise of due care should know that their dogs are of that type. *Scienter* is not an essential element of the unlawful conduct proscribed by the Ordinance. It was, therefore, error for the trial court to add such a requirement, and appellant's assignment of error to the court's instruction to the jury must be sustained. *Sink v. Moore*, 267 N.C. 344, 148 S.E.2d 265, cited and relied on by

defendants, is not here controlling. In *Sink* our Supreme Court was dealing with the common law rule applicable to the owner or keeper of a dog and no statute or city ordinance was involved. Under the common law rule, to recover for injuries inflicted by a domestic animal it was necessary to show not only that the animal was dangerous but also that the owner or keeper knew or should have known of its vicious propensity. Under the City Ordinance here involved, proof of *scienter* is not required."

■ Defendants claim that violation of an ordinance is only evidence of negligence when (1) plaintiff is a member of a class of persons protected by such statute or ordinance; (2) the harm suffered is of a kind which the statute was intended to prevent; and (3) violation of such was the proximate cause of the occurrence. They cite *Shuck v. Cook*, Okl., 494 P.2d 306 (1972) as holding that an animal-at-large statute is not enacted to protect motorists from hazards created by animals straying on the highways. Considering the form of the statute involved, allowing damages sustained by reason "of such domestic animals trespassing upon lands of another" we cannot say that the ruling was wrong. But the Casper ordinance has no such restriction and the prohibition against allowing a dog to be at large upon the streets is in no way limited to the protection of any particular group. In *Butler v. Frieden*, 208 Va. 352, 158 S.E.2d 121, 123 (1967) the Norfolk ordinance subjected the owner of a dog to fine if his dog " 'shall go at large upon any public street * * * of the city, unless such dog is accompanied by an attendant or held in leash by a responsible person.' " The ordinance made no provision for payment of damages for injuries by unrestrained dogs, but the Supreme Court of Virginia said this:

"The purpose of the ordinance, as we read it, is to protect the public against hazards created by dogs running at large, including the most obvious hazard, dogbite."

In *Brotemarkle v. Snyder*, 99 Cal.App.2d 388, 221 P.2d 992, 993 (1950) the purpose of such an ordinance is clearly set forth:

"The ordinance forbids the owner to allow his dog to be at large, except upon a leash. In our great, metropolitan areas, it is no longer possible to enjoy many things which were part and parcel of human life in earlier times, and still are in suburban and rural communities. Whatever may be said about the affection which mankind has for a faithful companion, modern city conditions no longer permit dogs to run at large."

A later case of the appellate court, citing *Brotemarkle*, said that:

" * * * A 'leash ordinance' such as here involved is designed for the protection of the public from dogs running at large and where its violation proximately causes injury to a plaintiff he may recover therefor against the owner." *Rollins v. Hedin*, 114 Cal.App.2d 488, 250 P.2d 728, 729 (1952).

Tennessee is equally clear in holding that "the purpose of the statute making it unlawful to allow a dog to be at large is to protect persons and property from injury by dogs." *Alex v. Armstrong*, 215 Tenn. 276, 385 S.W.2d 110, 114 (1964).

While the authorities do not seem to be unanimous, we think that the better rule is summarized in 59 A.L.R.2d 1328, 1337, where it is said:

"Because of the evident danger to motorists of animals at large on the highway, many jurisdictions have enacted statutes and ordinances making it unlawful for an owner or person in control of domestic animals to permit them to run at large. Some of these statutes and ordinances refer specifically to running at large on highways, whereas others prohibit running at large generally.

"In some instances the question has been raised as to whether or not the purpose of the particular legislation sought to be invoked was for the protection of travelers on the highway against injuries from animals running at large.

"A number of courts have stated that such was the purpose, or among the purposes, of the statute or ordinance in question."

We think that these authorities amply refute defendants' position on their first two points and hold that the ordinance was enacted for the purpose of protecting the traveling public from unwarranted and unnecessary interference from animals running loose. Plaintiff is a member of the group sought to be protected and the harm which he suffered is the kind that the ordinance was designed to prevent.

It is interesting to note that in *Alex v. Armstrong*, supra, the action was brought in two counts, one for common-law negligence and one based on violation of the statute. The trial court had entered judgment pursuant to jury verdicts for the plaintiffs on both counts and the court of appeals had reversed on both counts. The Supreme Court held that while the common-law count had not been proved the count based on the statute had been established, that violation of the dog statute (making it unlawful for any person to "allow" a dog to go upon the premises of another or upon a highway) was negligence per se, that the question of whether the violation was the proximate cause of the injury was one which had been properly submitted to the jury and therefore directed entry of judgment in favor of the plaintiff on that count. In Prosser, Law of Torts § 36, p. 200 it is said that once the statute has been interpreted as designed to protect the class of persons in which plaintiff is included against the risk of the type which has in fact occurred as a result of its violation "the great majority of the courts hold that an unexcused violation is conclusive on the issue of negligence, and that the court must so direct the jury."

 This court has not been so dogmatic although in *Hester v. Coliseum Motor Co.*, 41 Wyo. 345, 285 P. 781 (1930), we recognized that a violation of traffic regulations is at least evidence of negligence and by the great weight of authority was negligence per se. The 10th Circuit Court of Appeals has had some difficulty concluding just what the law in Wyoming is. See *Grayson v. Williams*, 256 F.2d 61, 64–65 (10 Cir. 1958), where it is said:

"It would seem that while the Wyoming Court has not drawn a clear distinction between the terms negligence per se and evidence of negligence, it is nonetheless committed to the doctrine that a violation of a traffic law or regulation will impose liability only when it is the proximate cause of the resulting injuries. * * * In our view, it is immaterial whether a violation of a traffic regulation constitutes negligence per se or only evidence of negligence. The decisive factor is whether such violation contributed to and was the proximate cause of the injury suffered. * * * "

We may therefore express our agreement with defendants' third point concerning proximate cause but it remains a question for the jury to determine whether such proximate cause existed, *Caillier v. City of Newcastle*, Wyo., 423 P.2d 653, 655 (1967). We cannot conclude as a matter of law that the plaintiff's injuries did not result from defendants' violation of the ordinance.

■ Defendants also state that animal-at-large statutes or ordinances are inapplicable in civil cases, absent a showing of culpable neglect on the part of the defendant. The case law on the subject is summarized in an annotation in 34 A.L.R.2d 1285, 1286:

"Apart from one case leaving the question open, and some doubtful authority for the proposition that the duty imposed by such legislation is an absolute one subjecting the owner to liability if his animals are running at large on the highway as a matter of fact, and an injury is caused thereby, the cases, either expressly or by implication, all support the proposition that the owner is not liable unless he has been guilty of negligence in some respect."

A recent Arizona case, involving an ordinance much like the Casper one, says simply that:

" * * * in order for there to be civil liability for violation of this ordinance it must be established that a person coming within the scope of the ordinance intentionally or negligently allowed a dog covered by the ordinance to run at large in violation of the ordinance." *Santanello v. Cooper*, 106 Ariz. 262, 475 P.2d 246, 250, 41 A.L.R.3d 881 (1970).

This rule has been generally accepted by this court in *Hinkle v. Siltamaki*, Wyo., 361 P.2d 37, 41 (1961), where it is said:

"According to the weight of authority, courts have had no hesitancy in holding that a statute making it unlawful for an owner of livestock 'to permit' them to run at large implies knowledge, consent, and wilfulness on the part of the owner, or such negligent conduct as is equivalent thereto, so that the proof of one of these elements is essential either to a conviction or an assessment of damages growing out of a violation."

This case must be read along with the later case of *Gilliland v. Steinhoefel*, Wyo., 521 P.2d 1350, 1351 (1974), another case of livestock wandering upon the highway, wherein it was urged that negligence "equivalent to 'knowledge, consent, and wilfulness'" imported such reckless " 'disregard of probable consequences as is equivalent to a wilful and intentional wrong.' " The contention was effectively answered with the statement that a plaintiff could satisfy his initial burden by establishing that defendant was negligent in his choice of a field, in effect, that is, that simple negligence on the part of the animal's owner was sufficient to prevent entry of a summary judgment against the plaintiff. The culpable conduct then is in either negligently or consciously permitting the animal to run at large, and while, as stated in *Gardner v. Black*, 217 N.C. 573, 9 S.E.2d 10, 12 (1940), the mere presence of the livestock upon the highway does not establish the culpability, a showing that the defendant has been negligent in some respect in his handling of the animal makes a case for the jury. In this case we hold that there was evidence of negligence on the part of Mrs. Allen which if believed by the jury would justify a finding of culpable neglect on the part of the defendants.

*Responsibility of the Defendant, David G. Allen*

Defendant David G. Allen contends that in any event, since there is no showing of negligence on his part, the dismissal as to him was proper. The point does not seem to have been raised in the court below, did not constitute a basis of the trial court's disposition of the matter and was not raised by plaintiff in his appeal. Nor does the deposition of Mrs. Allen bear upon the question other than to admit that the dog was jointly owned. While we have said that "[a] judgment will be affirmed on any legal ground appearing from the record," *P & M Cattle Company v. Holler*, Wyo., 559 P.2d 1019, 1024 (1977), *Zitterkopf v. Roussalis*, Wyo., 546 P.2d 436, 437 (1976) and cases therein cited, we do not think that that principle governs the disposition of this case.

 Active negligence of the particular defendant is not the sole basis of liability in cases of this kind. It has been said that, "At common law, an action may be maintained against the joint owners of animals for injury or damage caused by such animals." 4 Am.Jur.2d, Animals § 91, p. 338. The common-law duty to protect against harmful propensities of the animal is one that is imposed upon the owners or keepers of the animal without regard to negligence except that there must be knowledge of the propensities. As said in the early and leading case of *Oakes v. Spaulding*, 40 Vt. 347, 353 (1867), the defendants "sustained the relation of joint ownership voluntarily, and they thereby became charged with the correlative duty, and such duty rested on each personally." The joint ownership "inured to the benefit of both with reference to rights of property; it charged both with commensurate duties in reference to it as property." Subsequent cases have imposed liability upon an owner who had not been shown to have been guilty of negligence with respect to the specific act.[2] See *Swain v. Tillet*, 269 N.C. 46, 152 S.E.2d 297, 302 (1967). This case cites *Barber v. Hochstras-*

*ser*, 136 N.J.L. 76, 54 A.2d 458, 460 (1947) holding that while agency is not inherent in the marital relation "the essence of the action is not ownership, but the keeping and harboring of an animal, knowing it to be vicious." The case involved in part a challenged instruction that if the husband and wife "jointly harbored the dog in their household for their joint benefit and advantage, and allowed it the use of the public highways, there was mutual agency in its management, and the husband in that event was chargeable with the wife's prior knowledge of the dog's vicious propensities." 54 A.2d at 461. The court found no error and further said,

" * * * On principles familiar to the law of agency, the knowledge of the wife, acquired within the scope of the common enterprise or undertaking, was imputable to her husband. * * * "

 The element of common enterprise, or as it is often termed, joint enterprise, is of material importance in this case. It is said in 46 Am.Jur.2d, Joint Ventures § 5, p. 26 that joint enterprises are to be distinguished from joint ventures "in that the former is an undertaking for the mutual benefit or pleasure of the parties, while the latter is limited to business enterprises." While the question of the existence of a joint enterprise most commonly occurs in connection with automobile accidents, we see nothing in the principles applicable thereto that is not pertinent to this case. It has been said that the necessary elements are (1) an agreement, express or implied; (2) a common purpose; (3) community of pecuniary interest; and (4) an equal right to a voice in control and direction of the enterprise.

"Joint enterprise as a legal concept is not a status created by law; it is a contractual relationship of mutual agency employed to represent merely a unity between persons in the pursuit of a common purpose, as a result of which the negligence of one participant may be imputed to another. * * * " 46 Am.Jur.2d, Joint Ventures § 5, p. 27.

**2.** We have previously shown that both the common-law liability and responsibility under

the ordinance to control the dog are imposed upon the owner and the possessor of the dog.

"When the negligence of a member of a joint enterprise causes injury to a third person, such negligence is imputable to the other members of the enterprise and all may be held liable for the injury." 58 Am.Jur.2d, Negligence § 459, p. 19.

We believe questions of fact existed as to the relationship between the two defendants in their ownership and control of the dog and that there was no basis for a decision by the trial judge as a matter of law. We are therefore of the opinion that the question of liability of David G. Allen should not be decided until there has been a full development of the facts.

The summary judgment of dismissal is reversed as to both defendants and the cause remanded for trial.