CLAUDINE GARRETT, Plaintiff-Appellant v. CYNTHIA OVERMAN, and GEORGE OVERMAN, D/B/A SUNDANCE STABLES, Defendant-Appellees

No. 907SC1161

(Filed 18 June 1991)

Animals, Livestock, or Poultry § 15 (NCI4th)— horse—at large— electric fence—liability of keeper

The trial court erred by granting a directed verdict for defendant stable owners in an action brought by plaintiff for injuries sustained when her car struck a horse which had escaped from defendants through an electric fence. Plaintiff's evidence showed that defendant Cynthia Overman anticipated that horses would run through the electrified wires, defendants knew that other horses had run through the wires in the past, the wires were spliced together when broken, and a path led from the stables to a frequently traveled highway. The state of repair of the fence does not preclude a finding of breach of the duty of care if the fence is insufficient to restrain horses, the fact that this horse had not previously escaped does not preclude a finding of breach, and the fact that the horses which previously escaped had never damaged a motor vehicle does not preclude a finding of breach or proximate cause.

Am Jur 2d, Animals §§ 50, 52, 54.

Liability of owner of animal for damage to motor vehicle or injury to person riding therein resulting from collision with domestic animal at large in street or highway. 29 ALR4th 431.

APPEAL by plaintiff from order entered 31 July 1990 in WILSON County Superior Court by Judge Napoleon B. Barefoot. Heard in the Court of Appeals 15 May 1991.

Perry, Brown & Levin, by Cedric R. Perry, for plaintiff-appellant.

Gibbons, Cozart, Jones, James, Hughes, Sallenger & Taylor, by Thomas R. Sallenger, for defendant-appellees.

GREENE, Judge.

The plaintiff appeals the trial court's order entered 31 July 1990 wherein the trial court granted the defendants' directed verdict motion made at the close of the plaintiff's evidence.

The evidence viewed in the light most favorable to the plaintiff tends to show the following: On 31 January 1989, between 6:00 a.m. and 6:30 a.m., the plaintiff was driving to work on Bethlehem Road in Rocky Mount, North Carolina. While driving down that road, a horse collided with the plaintiff's car. After the horse had rolled over the car, the plaintiff brought the car to a stop in a nearby yard. The plaintiff exited her car from the passenger's side because the door on the driver's side of the car would not open. The plaintiff went to a nearby house and had the resident call the police and an ambulance. She went to Nash General Hospital where, though not admitted, she received emergency room treatment.

In addition to minor cuts and bruises, the plaintiff incurred back and neck injuries as a result of the collision. She experienced decreased mobility and intense pain in her back. Because of her decreasing mobility and pain, she went to Heritage Hospital in Tarboro. Later, she was treated by Dr. S. L. Scarborough, a licensed chiropractor in North Carolina. According to Dr. Scarborough, the collision caused the plaintiff to suffer from sciatic neuritis, which is painful radiation usually down a leg, and lumbalgia, which is a painful lumbar spine.

The horse that collided with the plaintiff's car was, at the time of the collision, under the custody of the defendants. The defendants owned and operated Sundance Stables where the defendants boarded and bred horses. At the time of the collision, the defendants had operated Sundance Stables for over twelve years. On 31 January 1989, the defendants had twenty-one horses boarded at the stables.

Sundance Stables was located off of Old Mill Road, a frequently traveled highway, near Bethlehem Road, also a frequently traveled road, and was enclosed by a fence, a portion of which is made of wood and the remainder of electrified stainless steel wire. The fence which bordered Old Mill Road stood approximately four to five feet high and was made of three wood planks supported in a horizontal position by posts. Each plank had space between it and the next plank. This portion of the fence was erected in 1988,

and no horse had jumped through this wooden fence at any time before the collision.

The remainder of the fencing was comprised of electrified wire of either one or two strands supported by wood posts spaced several feet apart. The fence comprised of two strands of wire had a bottom wire standing about two feet off the ground, and the top wire standing about four feet off the ground. The stainless steel wires were electrified by a device known as a "hot box." Two to three times a day on days when the horses were in the pasture, someone at the stables checked either the "hot box" or the wires to make sure that the wires were not broken.

Cynthia Overman (Overman), one of the defendants, testified that she anticipated horses running through the electrified wires. According to Overman, the horses "test" the wires when they arrive at the stables, and when they get shocked by the wires, they "learn their lesson . . . ." Although Overman testified that the horse in question had been in the pasture every night for two weeks and "was used to the wire," she did not testify that this horse had "tested" the wires in that two-week period. Prior to 1989, other horses had run through the electrified wires. Each time this happened, someone would splice the wires back together so as to make the wire electrified again. George Overman, another defendant, had spliced the wires on various occasions.

The horse which collided with the plaintiff's car ran through the portion of the electric fence comprised of two electrified wires. After getting out of the pasture, the horse followed a path in the back part of the stable area, which path led to Bethlehem Road where the horse collided with the plaintiff's car.

---

The issue is whether the plaintiff presented substantial evidence of the defendants' negligence to survive a directed verdict motion.

> The purpose of a motion for directed verdict is to test the legal sufficiency of the evidence for submission to the jury and to support a verdict for the non-moving party. . . . In deciding the motion, the trial court must treat non-movant's evidence as true, considering the evidence in the light most favorable to non-movant, and resolving all inconsistencies, contradictions and conflicts for non-movant, giving non-movant the benefit of all reasonable inferences drawn from

the evidence. . . . Non-movant's evidence which raises a mere possibility or conjecture cannot defeat a motion for directed verdict. . . . If, however, non-movant shows more than a scintilla of evidence, the court must deny the motion.

*McFetters v. McFetters*, 98 N.C. App. 187, 191, 390 S.E.2d 348, 350, *disc. rev. denied*, 327 N.C. 140, 394 S.E.2d 177 (1990) (citations omitted). "More than a scintilla of evidence" means the same as "substantial evidence." *State v. Blake*, 319 N.C. 599, 604, 356 S.E.2d 352, 355 (1987). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980). "Accordingly, if the non-movant presents such relevant evidence as a reasonable mind might accept as adequate to support the elements of the non-movant's claim or defense, the trial court must deny a motion for a directed verdict." *Hines v. Arnold*, 103 N.C. App. 31, 404 S.E.2d 179 (1991).

"The liability of the owner [or person having charge] of animals for permitting them to escape upon public highways, in case they do damage to travelers or others lawfully thereon, rests upon the question whether the keeper is guilty of negligence in permitting them to escape. In such case the same rule in regard to what is and what is not negligence obtains as ordinarily in other situations." *Gardner v. Black*, 217 N.C. 573, 576, 9 S.E.2d 10, 11 (1940). Negligence "requires proof that: the defendant had a duty of care; the defendant breached that duty; the breach was the actual and proximate cause of plaintiff's injury; and damages resulted from the injury." *Stoltz v. Burton*, 69 N.C. App. 231, 233-34, 316 S.E.2d 646, 647 (1984).

The defendants do not dispute that they owed a duty to the plaintiff. Not only did Overman testify that she "had a responsibility to keep the horse restrained and off the streets" to the best of her ability, but "[i]t is the legal duty of a person having charge of animals to exercise ordinary care and the foresight of a prudent person in keeping them in restraint." *Gardner*, 217 N.C. at 576, 9 S.E.2d at 11. Furthermore, the defendants do not dispute that the plaintiff suffered damage as a result of the collision with the horse. However, the defendants argue that they did not breach their duty of care.

The defendants argue that because the electrical fencing was in good repair, the horse in question had not previously escaped,

and there was no evidence that any of the horses that had previously escaped had ever collided with a motor vehicle upon a highway, the defendants could not have breached their duty of care. We disagree. The state of repair of the fence does not preclude a finding of a breach if the fence itself, even in good repair, is insufficient to restrain horses. The fact that the horse in question had not previously escaped from the pasture does not preclude a finding of breach. *See Wells v. Johnson*, 269 N.C. 622, 153 S.E.2d 2 (1967) (cattle); *Eatman v. Bunn*, 72 N.C. App. 504, 505-06, 325 S.E.2d 50, 51 (1985) (cow); Annotation, *Liability of Owner of Animal for Damage to Motor Vehicle or Injury to Person Riding Therein Resulting from Collision with Domestic Animal at Large in Street or Highway*, 29 A.L.R.4th 431 (1984). Furthermore, the fact that the horses which had previously escaped never damaged a motor vehicle does not preclude a finding of breach or proximate cause. *See Wells*, 269 N.C. at 622, 153 S.E.2d at 3 (no evidence that cattle damaged motor vehicles when out of pasture on previous occasions); *Shaw v. Joyce*, 249 N.C. 415, 106 S.E.2d 459, 460 (1959) (no evidence that mule damaged motor vehicles when out of pasture on previous occasions).

The plaintiff's evidence shows that Overman anticipated that horses would run through the electrified wires, the defendants knew that other horses had run through the wires in the past, the wires were spliced back together when broken, and a path led from the stables to a frequently traveled highway. This evidence is such relevant evidence as a reasonable mind might accept as adequate to support the conclusions that the defendants were negligent in preventing the horse from escaping from the pasture, and that they should have reasonably foreseen that a horse would escape from the pasture and likely cause harm to a traveler on the highway. Accordingly, the trial court erred in granting the defendants' directed verdict motion.

Reversed and remanded.

Judges EAGLES and LEWIS concur.