JENNIE LOU STRICKLAND, Mother and JERRY STRICKLAND, Father, of GORDON G. STRICKLAND, Employee, Plaintiff v. CAROLINA CLASSICS CATFISH, INC., Employer, & NORTH CAROLINA FARM BUREAU MUTUAL INSURANCE COMPANY, Carrier, Defendants

No. COA94-781

(Filed 6 June 1995)

**Workers' Compensation § 129 (NCI4th)— intoxication of employee—contributing but not proximate cause of death—sufficiency of evidence**

The Industrial Commission did not err in finding as fact and concluding as a matter of law that the employee's intoxication

was not a proximate cause of his death where there was testimony that alcohol was a contributing circumstance, but there was also testimony that the accident could also have occurred even if the employee had not been drinking; and there was evidence that fatigue, shifting of load, excessive speed, difficulty of handling the truck on the curve, and an unused seat belt were contributing causes of the employee's death.

**Am Jur 2d, Workers' Compensation § 256.**

Judge GREENE dissenting.

Appeal by defendants from the Opinion and Award of the North Carolina Industrial Commission filed 11 April 1994. Heard in the Court of Appeals 7 April 1995.

*Harrington, Edwards & Braddy, L.L.P., by Roberta L. Edwards and Peter J. M. Romary, for plaintiff-appellee.*

*Young Moore Henderson & Alvis P.A., by Joe E. Austin, Jr., for defendants-appellants.*

LEWIS, Judge.

Gordon G. Strickland was killed in a highway accident which occurred while returning from a trip for his employer, defendant Carolina Classics Catfish, Inc. (hereinafter Catfish, Inc.). On 12 June 1990, Strickland began work at 8:00 a.m., drove over 200 miles to make a delivery of catfish fingerlings, and then began his return trip. He was driving a company truck with three storage tanks mounted on the truck bed. After the delivery, two tanks were empty and one contained dead catfish and water. At approximately 1:20 a.m. on 13 June 1990, as he was driving north along Highway 903, Strickland lost control of the truck in a sharp curve and was killed when his truck overturned. The regular speed limit on the road was 55 miles per hour but 35 miles per hour at the curve. It is undisputed that Strickland was driving about 50 miles per hour in the curve and about 40 miles per hour when the truck crashed, that he had a blood alcohol concentration of 100 milligrams percent (equivalent to .10 on a breathalyzer scale), that he was not wearing a seat belt at the time of the accident, and that Workers' Compensation applies. The evidence also tended to show that Strickland was thrown about in the truck and received fatal head injuries.

## STRICKLAND v. CAROLINA CLASSICS CATFISH

[119 N.C. App. 97 (1995)]

Strickland's parents, Jennie Lou Strickland and Jerry Strickland, gave notice of Strickland's death and their request for compensation to defendant Catfish, Inc. pursuant to N.C.G.S. § 97-22. The parties failed to reach an agreement, and claimants requested a hearing pursuant to N.C.G.S. § 97-83. Defendants contend that the claim is precluded by N.C.G.S. § 97-12, which bars workers' compensation when intoxication proximately causes the injury or death of the worker. Deputy Commissioner John Charles Rush heard evidence on whether Strickland was intoxicated and what factors caused the accident.

The key evidence presented on whether intoxication proximately caused Strickland's death was as follows: ·

Trooper Jerry Mumford, who arrived at the accident scene shortly after the accident, testified that there was a very slight odor of alcohol about the cab of the truck. On his accident report, he listed alcohol as a "contributing circumstance" and indicated that Strickland had been drinking but that he was unable to determine impairment. He stated that some persons are more tolerant of alcohol than others so that impairment must be determined based on a variety of factors and observations. He also testified that other factors such as speed, fatigue, and weight shift contributed to the accident.

Deputy Sheriff Thomas Wilson who lived near the curve testified that the curve was "treacherous" and would be "more severe" for a large vehicle like a truck. He also testified that he was aware of about seven or eight accidents having occurred at that curve.

Dr. Page Hudson, a forensic pathologist, testified that he thought Strickland was impaired because, in his view, anyone with a blood alcohol concentration of 100 milligrams percent was impaired. He noted that the condition of Strickland's liver indicated previous heavy use of alcohol. He further testified that alcohol was a contributing cause but that he could not say it was the sole cause, that speed was "a huge factor", and that speed, fatigue, weight shift, and alcohol all were probably factors causing the accident. On cross-examination, he conceded that the accident "could reasonably have happened without any one of" the factors of alcohol, speed, fatigue, lack of familiarity with the road, time of day, or the presence of liquids in the truck and that "any one of them [the factors], as far as I'm concerned, could have been dropped out and it [the accident] still could have happened."

Charles Manning, Jr., an accident reconstructionist called by defendants, testified that weight shift did not contribute to the accident, that speed was "the major contributing factor" causing the accident and that alcohol was a second factor. He also conceded that it was "possible" that the accident could have happened without alcohol consumption.

Barry Mitchell Hamill, an accident reconstructionist called by plaintiffs, testified that the curve was difficult and that weight shift and fatigue contributed to the accident. In describing the effect of weight shift, he testified that Strickland had control of the truck up until a certain point when the weight shifted and once that point was reached Strickland was "at a point of no return" and there was "nothing more" that could be done to control the vehicle at that point. He also testified that the baffles in the tanks were not designed to prevent water from shifting from side to side and that this design contributed to the weight shift causing the truck to turn over. As to the impact of alcohol use, he testified that he had "no way of knowing" whether alcohol use contributed to the accident because he could not know, absent further information and observations, what Strickland's alcohol tolerance was.

Strickland's sister, Sonya Pickler, testified that her brother was not a heavy drinker. She also testified that the truck was difficult to handle, her brother was uncomfortable driving it, and that the seat belt was not working two weeks prior to the accident. She further testified that her brother was more accustomed to driving a car, rather than the truck, around the curve.

Deputy Commissioner Rush awarded compensation to claimants after making the following findings of fact and conclusions of law, *inter alia*, on the issue of whether intoxication caused the accident:

FINDINGS OF FACT:

5. At about 1:20 a.m. on June 13, 1990, the deceased was travelling north on Highway 903 . . . . A 35-mile per hour speed sign was located south of the Bridge for northbound traffic . . . . The deceased continued on the highway and into the sharp curve. He was about two-thirds of the way through the curve when the truck started skidding sideways to the right. The truck skidded onto the right grassy shoulder of the highway where it continued to skid and then turned over landing in an upside down position

STRICKLAND v. CAROLINA CLASSICS CATFISH

[119 N.C. App. 97 (1995)]

*. . . . The deceased was thrown about in the cab of the truck and sustained severe head injuries causing his instant death.*

*6. . . . The deceased was travelling about 50 miles per hour around the curve and about 40 miles per hour when the truck impacted.*

7. When State Highway Patrolman, Jerry Mumford, arrived at the scene about five minutes after the accident the deceased was still in the cab of the Nissan truck and *there was a slight odor of alcohol about the cab. There were no other signs of alcohol about the cab of the truck. The patrolman noted on his investigation report alcohol use and exceeding safe speed limit were a contributing circumstances [sic] and that the deceased had been drinking but he was unable to determine the impairment of the deceased.*

9. An autopsy report revealed the deceased had a blood alcohol of 100 mg% which is the same as .10 . . . . *There was [sic] fatty changes in the liver which indicated the deceased consumed considerable alcohol in the past. Since the deceased consumed alcohol to this extent he would have had a high tolerance to alcohol.* The cause of death on the report was multiple severe head injuries.

10. *At the time of the accident the deceased had been on duty with the defendant employer about 17 hours.* During about eight of these hours the deceased was driving the Nissan truck.

12. *The death of deceased was not proximately caused by his intoxication.*

CONCLUSIONS OF LAW:

1. The deceased sustained an injury by accident arising out of and in the course of his employment on June 13, 1990, and such injury by accident resulted in his immediate death. *The death of the deceased was not proximately caused by his intoxication. The plaintiffs, therefore, shall not be barred from receiving compensation in this case.* § G. S. 97-2(6), § G. S. 97-12.

(Emphasis added). Defendants requested review by the full Commission (hereinafter Commission). The Commission adopted Deputy Commissioner Rush's opinion and award.

The key issue on appeal is whether the Commission erred in finding as fact and concluding as a matter of law that Strickland's intoxication was not a proximate cause of his death. We affirm.

The scope of review of an appeal from the Industrial Commission is limited to a determination of whether the findings of the Commission are supported by " 'any competent evidence,' " and " 'whether the Commission's findings of fact justify its legal conclusions and decision.' " *Roberts v. ABR Assocs., Inc.*, 101 N.C. App. 135, 138, 398 S.E.2d 917, 918 (1990) (quoting *Sanderson v. Northeast Constr. Co.*, 77 N.C. App. 117, 120-21, 334 S.E.2d 392, 394 (1985)). The Commission's findings of fact are conclusive on appeal if supported by competent evidence; its legal conclusions are reviewable on appeal. *Roberts*, 101 N.C. App. at 141, 398 S.E.2d at 920. In addition, the Commission, and not this Court, is "the sole judge of the credibility of the witnesses" and the weight given to their testimony. *Russell v. Lowes Product Distribution*, 108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993).

The employer bears the burden of establishing, pursuant to N.C.G.S. § 97-12, that intoxication was the proximate cause of the injury. *Sidney v. Raleigh Paving & Patching*, 109 N.C. App. 254, 256, 426 S.E.2d 424, 426 (1993). To establish proximate cause under N.C.G.S. § 97-12, an employer must show that "it is more probable than not that intoxication was a cause in fact of the injury," but need not show that intoxication was "a sole cause." *Id.* In affirming the Commission's opinion and award, the *Sidney* court stated that "the opinion of the Industrial Commission . . . is conclusive on this Court *if it is supported by any competent evidence . . . and can only be set aside if there is a complete lack of competent evidence." Id.* (emphasis added) (citations omitted).

After reviewing all of the evidence presented in this case, we hold that there is competent evidence to support the Commission's findings of fact and that these findings justify its conclusion of law that Strickland's death was not proximately caused by his intoxication. Patrolman Mumford's testimony that alcohol was a contributing circumstance was qualified by his further testimony that he could not determine impairment and that his listing of alcohol as a contributing circumstance simply meant that the investigation revealed that Strickland "had a determined amount of alcohol in his body at the time of the accident." Although Hudson and Manning suggested that intoxication was a contributing cause, their testimony was contra-

dicted by concessions on cross-examination that the accident could also have occurred even if Strickland had not been drinking. The weight and sufficiency of the evidence on these factors depended in large part on the credibility of the witnesses. Since Hudson and Manning equivocated on whether intoxication was a proximate cause of Strickland's death, we can reasonably conclude that Deputy Commissioner Rush and the Commission found their credibility wanting on this issue. *See Sidney*, 109 N.C. App. at 257, 426 S.E.2d at 427.

The record is also replete with evidence that fatigue, shifting of the water and catfish in the storage tanks, excessive speed, the difficulty of handling the truck on the curve, and the unused seat belt were contributing causes of Strickland's death. Manning and Hudson stated, respectively, that speed was "the major contributing factor" or "a huge factor." Mumford also stated that speed was a factor. Mumford, Hudson, and Hamill all stated that fatigue was a causal factor. Strickland's sister testified that the truck was difficult to handle, the seat belt was not working, and that her brother was uncomfortable driving the truck and not used to driving it around that curve. Furthermore, Hamill testified that once the truck reached a certain point in the curve and the weight shifted, there was nothing Strickland could have done to regain control of the vehicle. Both Mumford and Hudson confirmed that weight shift was a contributing factor. The Commission could reasonably have concluded that any of these factors proximately caused Strickland's death and that defendants did not meet their burden to prove that intoxication was a proximate cause.

Given the presence of competent evidence on both sides of the issue of whether intoxication was a proximate cause of death, we affirm the opinion of the Commission that the employer did not carry its burden on this issue.

Defendants also contend that the Commission failed to review the award as required pursuant to N.C.G.S. § 97-85 (1991). We conclude that this assignment of error is without merit.

For the reasons stated, the Opinion and Award of the Commission is affirmed.

Affirmed.

Judge MARTIN, Mark D. concurs.

Judge GREENE dissents.

Judge GREENE dissenting.

Because some of the testimony in this case is legally insufficient to support a finding of fact that the "death of the deceased was not proximately caused by his intoxication" and because the Commission failed in its duty to identify in its Opinion and Award the portions of testimony on which its finding was based, I would reverse the Opinion and Award of the Commission.

There were four persons who testified with regard to the deceased's intoxication at the time of the accident. Hudson stated that "in [his] opinion [intoxication] did contribute" to the accident, but testified as follows on cross-examination:

Q. . . . Considering all the factors that were at work here absent the alcohol—the speed, the fatigue, the truck, the fact that he was hauling liquids, the fact that it was late at night, the fact that he may or may not have been familiar with the road—isn't it entirely conceivable that this accident could have happened exactly the same way that it did absent any alcohol in his system.

A. Yes, it could have happened—could reasonably have happened without any one of those factors. Any one of them, as far as I'm concerned, could have been dropped out and it still could have happened.

Manning testified that speed and alcohol, and not the shifting of the truck's weight due to the tank full of catfish and water, were the factors which contributed to Strickland's accident. He also admitted on cross-examination, however, that if Strickland were driving fifty-three miles per hour around the curve, in the same truck, at 1:30 a.m., "[i]t's possible" that the accident could have still occurred, even absent any alcohol consumption by Strickland. Mumford listed alcohol as a "contributing circumstance" on his accident report and also determined that speed, the time of day, and a shifting of the weight on the truck contributed to the accident. Hamill cited fatigue, weight shift, and speed as contributing causes, but stated that he had "no way of knowing whether" Strickland's alcohol use was a contributing factor based on the evidence available.

The dispositive question is whether this testimony can support the finding entered by the Commission that intoxication was not a proximate cause of the death of the employee. I do not disagree with the majority that this Court is bound by the finding if there is "any competent evidence" to support it. This "any competent evidence"

STRICKLAND v. CAROLINA CLASSICS CATFISH

[119 N.C. App. 97 (1995)]

standard of review, however, does not mean that any evidence, without regard to its quantity, is sufficient to support a finding. In order to support a finding, the competent evidence must be of "minimum quantity." 3 Arthur Larson & Lex K. Larson, *The Law of Workmen's Compensation* § 80.10(c) [hereinafter *Larson*]. In the words of our Supreme Court, the question is whether there exist "sufficient competent evidence . . . to support [the] findings of fact [of the Commission]." *Walston v. Burlington Indus.*, 304 N.C. 670, 678, 285 S.E.2d 822, 827, *reh'g granted*, 305 N.C. 296, —— S.E.2d —— (1982) (making factual correction only); *Hildebrand v. Furniture Co.*, 212 N.C. 100, 109, 193 S.E. 294, 300 (1937); *see also Keller v. Wiring Co.*, 259 N.C. 222, 223, 130 S.E.2d 342, 342-43 (1963) (appellate court reviews evidence to determine whether it was "sufficient" to support the Commission's findings); *Aycock v. Cooper*, 202 N.C. 500, 504, 163 S.E. 569, 570 (1932) (there must be evidence of "sufficient probative force" to support the Commission's findings). Regardless of the phrase used to describe the "minimum quantity" of the evidence necessary to support a finding of the Commission, the finding "cannot . . . be based on speculation and conjecture," *Larson* at 80.00, and must be based on evidence that a reasonable mind might accept as adequate to support the finding. *See Garret v. Overman*, 103 N.C. App. 259, 262, 404 S.E.2d 882, 884, *disc. rev. denied*, 329 N.C. 787, 408 S.E.2d 519 (1991). When there is a lack of sufficient competent evidence to support the Commission's findings of fact, this Court will set those findings aside. *See Hildebrand*, 212 N.C. at 112-13, 193 S.E. at 303.

The majority concludes that there is "competent evidence on both sides of the issue of whether intoxication was a proximate cause of death." The only testimony in this record that intoxication was not a cause of the death is that of Hudson and Manning given on cross-examination. Manning stated that the accident "possibl[y] could have happened absent alcohol." This testimony is nothing more than speculation and cannot support a finding of no causation. *See Hinson v. National Starch & Chem. Corp.*, 99 N.C. App. 198, 202, 392 S.E.2d 657, 659 (1990) (sufficient evidence must reflect some degree of probability). Hudson was asked whether it was "conceivable" that alcohol may not have been a contributing factor. In response he stated that the accident "could" have happened even absent the use of alcohol. Although opinion testimony expressed in terms of "could" can be sufficient evidence, it "depends upon the general state of the evidence." 1 *Kenneth S. Brown, Brandis and Brown on North Carolina*

*Evidence* § 189 n.330 (4th ed. 1993). The opinion that the accident "could" have happened without alcohol was given in response to the question of whether it was "conceivable" that alcohol was not a contributing factor to the death. Conceivable is defined to mean "logically possible." Webster's *Third New International Dictionary* 469 (1968). The answer when read in the context of the question suggests nothing more than the possibility that the accident could have happened absent the use of alcohol and thus cannot support the finding of no proximate cause. *See State v. Robinson*, 310 N.C. 530, 534, 313 S.E.2d 571, 574-75 (1984) ("could" cause vaginal condition insufficient to support finding).

The findings entered by the Commission do not reveal whether the Commission based its proximate cause finding on the evidence which is inadequate to support that finding. S*ee Morgan v. Thomasville Furniture Indus., Inc.*, 2 N.C. App. 126, 128, 162 S.E.2d 619, 620 (1968) (Commission must make specific findings with regard to crucial facts). Accordingly, I would reverse the Opinion and Award of the Commission and remand for entry of a new Opinion and Award with directions that the testimony of Hudson and Manning given on cross-examination, as discussed herein, not be considered as sufficient to support a finding on proximate cause.