Mary BICE *v.* WATERLOO INDUSTRIES, INC.

CA 99-1259                                        26 S.W.3d 129

Court of Appeals of Arkansas
Division III
Opinion delivered August 30, 2000

*Philip M. Wilson*, for appellant.

*Riffel and King*, by: *V. James King, Jr.*, for appellee.

JOHN E. JENNINGS, Judge. Mary Bice was employed by Waterloo Industries, Inc., on April 4, 1998. She was injured when her hand was caught in a press she was operating. The index, middle, and ring fingers of her right hand were broken and required pinning by an orthopedic surgeon. An administrative law judge found her injury compensable, but the full Commission reversed in a 2-1 opinion. The sole contention on appeal is that the Commission's decision is not supported by substantial evidence. We agree and reverse.

██ ██ The Commission denied compensation on the basis of Ark. Code Ann. § 11-9-102(5)(B)(iv) (Supp. 1999), which provides that an injury is not compensable if the accident was "substantially occasioned by" the use of illegal drugs and that the presence of illegal drugs creates a rebuttable presumption that the injury was substantially occasioned by their use. Whether the presumption has been overcome is a question of fact for the Commission. *Express Human Resources III v. Terry*, 61 Ark. App. 258, 968 S.W.2d 630 (1998). We will affirm the decision of the Commission on a question of fact if it is supported by substantial evidence. *Hope Livestock Auction Co. v. Knighton*, 67 Ark. App. 165, 992 S.W.2d 826 (1999). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Weaver v. Whitaker Furniture Co.*, 55 Ark. App. 400, 935 S.W.2d 584 (1996).

Appellant's injury occurred on a Saturday morning. The following Monday afternoon appellant was given a drug test which showed positive for codeine and methamphetamine. The Commission invoked the rebuttable presumption based on the following colloquy between appellee's counsel and the appellant:

> Q. Okay. Well, there's been a drug screen, Ms. Bice, which we've talked about before, which shows positive for

Methamphetamines and also for Codeine. Are you aware of that?

A. Yes.

Q. Where would you think the codeine came from?

A. The Codeine probably came from the Tylenol 3 with Codeine.

Q. And where did you get that?

A. I got them from my mother.

Q. Now, do you have any idea where the Methamphetamine might have come from?

A. I have no idea unless it came out of one of those bottles.

Q. Did you between Saturday morning when this occurred and Monday afternoon when you took the — you have a sample for a drug test. Is that right?

A. Yes.

Q. Did you take anything that would have had Methamphetamine in it during that time?

A. No, not that I'm aware of.

Q. Okay. So it should have been the same on Saturday it would have been on Monday, you would have thought?

A. I would think. I took a lot of stuff for pain over the weekend.

The Commission stated, "Consequently, pursuant to claimant's own testimony, had she taken a drug test immediately following her accident, it would have shown positive for methamphetamines." We need not decide whether the evidence relied upon by the Commission is sufficient to raise the presumption because we are persuaded that, in any event, the Commission erred in not finding that the presumption had been overcome.

Only three witnesses testified at the hearing — the appellant, the appellee's plant manager, Kenneth Bates, and the appellee's safety supervisor, Ron Margo. Ms. Bice explained how the

machine operated and testified that the press was equipped with straps that pulled the worker's hands out when the die "came down." She further testified that she put the straps on, and that Mr. Bates checked and adjusted her straps and signed the card stating that she was safe to operate the press. Ms. Bice then explained how the accident happened. She testified that when she talked with Mr. Margo on Monday he told her that a boy had gotten his hand caught in the same machine the night before she did and that she should never have been running it. She also testified that another employee, Bonnie Mancea, was injured running the same type of product. She testified that the maintenance people told her that they had found a "double pinch point" and that was one of the reasons she had gotten her hand in the press.

■ Had this been the only testimony as to the cause of the accident the Commission might well have been justified in finding that the presumption had not been overcome. The testimony of a party need not be credited by the trier of fact. *See Tyson Foods v. Disheroon*, 26 Ark. App. 145, 761 S.W.2d 617 (1988). But here the appellant's testimony was certainly supported by that of the appellee's plant supervisor and safety supervisor. Mr. Bates testified that within a twenty-four-hour period another person had been injured while running the same machine. He stated that he had personally checked appellant's straps on the date of the accident, and that since the accident the company had put a double hand control button on the press. Mr. Margo testified that the accident was caused by a "pinch point" and that it was "all corrected with a double hand-actuating device." Indeed, the Commission expressly found that two other workers had experienced difficulties with this press, that appellee's witnesses testified about the press "malfunctioning" on two other occasions, and that the accident was a result of the double pinch point. Unaccountably, the Commission's opinion states that the evidence indicated that the claimant was the only person who actually sustained an accidental injury. Apart from the appellant's testimony, the appellee's plant supervisor also testified that another employee was injured.

■ Given the testimony of appellee's witnesses and the findings of the Commission it is clear that appellant's accident was caused by the press's double pinch point. If the presumption was properly invoked, it was effectively rebutted by the testimony of

appellee's witnesses and the facts found by the Commission. We do not think the Commission could reasonably conclude otherwise.

Reversed.

HART and ROAF, JJ., agree.