RALPH G. WILLEY, Guardian Ad Litem for ELIZABETH MULLINS, Minor Daughter of WILLIAM HENRY MULLINS, Deceased, Employee, Plaintiff v. WILLIAMSON PRODUCE, Employer, THE GOFF GROUP, Carrier, Defendants

No. COA01-226

(Filed 5 March 2002)

**Workers' Compensation— death benefits—truck driver—findings of fact—impairment—proximate cause**

    The Industrial Commission erred in a workers' compensation case by awarding plaintiff guardian ad litem death benefits for the use and benefit of decedent truck driver employee's minor daughter under N.C.G.S. §§ 97-38 and 97-39 based on defendants' presentation of sufficient evidence of the affirmative defense found in N.C.G.S. § 97-12 that the employee's death from a single tractor-trailer accident was proximately caused by his being under the influence of a non-prescribed controlled substance at the time of his fatal accident, including cocaine and marijuana, because: (1) the Commission did not make an express finding on the issue of whether decedent was impaired at the time of the accident; (2) the Commission improperly excluded the testimony of an expert who did not base his opinion on decedent's height, weight, and medical history since the record is void of any testimony that height, weight, and medical history are necessary facts to determine impairment; (3) the Commission did not make an express finding of fact as to the proximate cause of the accident, and there is a lack of sufficient competent evidence to support the finding that the proximate cause of the accident was fatigue; and (4) the Commission failed to address the testimony of the two eyewitnesses of the accident and failed to enter a finding of fact with respect to their testimony.

    Judge GREENE dissenting.

Appeal by defendants from opinion and award of the North Carolina Industrial Commission filed 7 December 2000. Heard in the Court of Appeals 8 January 2002.

*Keel O'Malley, L.L.P., by Susan M. O'Malley, for plaintiff-appellee.*

*Lewis & Roberts, P.L.L.C., by John H. Ruocchio, for defendant-appellants.*

TYSON, Judge.

Williamson Produce ("Williamson") and The Goff Group (collectively "defendants") appeal the amended opinion and award of the Full Commission ("Commission") of the North Carolina Industrial Commission filed 7 December 2000 awarding Ralph G. Willey ("plaintiff"), the guardian ad litem, workers compensation death benefits for the use and benefit of Elizabeth Mullins.

## I. Facts

The undisputed facts show that on 17 November 1997, William Henry Mullins ("Mullins") was driving a truck for Williamson during the course and in the scope of his employment, and was killed in an accident. At the time of the accident, Elizabeth Mullins was a minor and the only dependent of Mullins. The guardian ad litem requested a hearing before the deputy commissioner to determine defendant's liability for benefits available to Elizabeth Mullins pursuant to N.C.G.S. § 97-38 and § 97-39. Defendants denied liability under N.C.G.S. § 97-12.

Two eyewitnesses of the accident reported that Mullins was driving erratically, weaving from one lane to the other, for a period of forty-five minutes prior to the accident, before his tractor-trailer left the pavement on the right side of the road and slid down an embankment.

Mullins' urine contained cocaine and marijuana at the time of his death. The metabolites of cocaine found in Mullins' urine measured at least 300 nanograms per milliliter.

Dr. Arthur E. Davis, Jr. ("Davis") was qualified as an expert in pathology and toxicology. Dr. Davis testified that at the time of the fatal collision, the employee was impaired by cocaine and that this impairment caused the accident and the employee's death. Dr. Davis formulated his opinion after reviewing all of the documents and records in evidence, including: the accident report, coroner's report, death certificate, three separate toxicology reports, case reports, and employment records. Dr. Davis further testified that the threshold levels established by the federal government of 300 nanograms per milliliter is a level sufficient to have a pharmacological effect or show impairment.

Dr. Arthur John McBay ("McBay") was qualified as an expert in forensic toxicology. Dr. McBay's review consisted of the accident

report, coroner's report, death certificate, and toxicology reports. Dr. McBay testified that it was impossible to determine from the drug screens and other information whether Mullins was impaired at the time of the fatal collision. Dr. McBay further testified that it is not possible to tell from a urine drug screen whether either drug was introduced to Mullins' system within twelve hours before Mullins' death and that it is not possible for anyone to determine whether the substances impaired Mullins.

The deputy commissioner, considering the testimony of two eye-witnesses of Mullins' erratic driving, placed greater weight on the testimony of Dr. Davis. The deputy commissioner denied benefits, finding that "the employee was under the influence of and impaired by cocaine" and that "[t]he employee's death was proximately caused by his being under the influence of cocaine."

The Commission, with one commissioner dissenting, reversed the deputy commissioner. The Commission found in pertinent part:

> 5. A urinary drug screen was performed post mortem [on Mullins] which showed a positive screen for the metabolites for cocaine and marijuana . . . The cut off [sic] for the drug screen for the cocaine metabolite is 300 nanograms. A nanogram is a billionth of a gram. There was no evidence of the quantitative amount of the cocaine or marijuana metabolites in decedent's system at the time of the accident which resulted in his death.
>
> 6. There is no evidence of when either cocaine or marijuana entered [Mullins'] system, how much was introduced or the mode of administration. It is possible for an individual to test positive for the cocaine metabolite for 3 or 4 days after it is introduced to their system. It is possible to test positive for the marijuana metabolite for as long as 20 days after it is introduced to an individual's system.
>
> 7. Based on the post mortem urine drug screen performed on [Mullins'] body, there is no scientific basis for determining what impact, if any, the drug metabolites had on [Mullins] at the time of the accident. Drug screens are only meant to demonstrate an analytically significant amount of a metabolite, not a pharmacologically significant amount. An analytically significant amount simply means an amount that can be determined with certainty. A pharmacologically significant amount is an amount that has a measurable effect on an individual. Therefore, it cannot be shown

that 300 nanograms of the metabolite of cocaine in [Mullins'] urine had a measurable pharmacological effect on him at the time of the accident.

8. The opinion of Dr. Art Davis that [Mullins] was impaired at the time of the accident is not given any weight. Dr. Davis based his opinion on a review of only four documents. He did not know [Mullins'] height, weight, medical history, when cocaine was introduced to [Mullins'] system or how much was introduced. As such, Dr. Davis' opinions regarding [Mullins'] potential impairment or intoxication at the time of the accident were given on an inadequate factual basis to be accepted. Dr. Davis provided no opinion on the effect of the marijuana metabolites on [Mullins'] at the time of the accident.

. . . .

10. Dr. Arthur McBay has extensive experience in the area of forensic toxicology and has served as the Chief Toxicologist at the Office of Chief Medical Examiner in North Carolina. Dr. Arthur McBay testified that based on the data obtained subsequent to [Mullins'] death that it is impossible to determine the time and means of administration of marijuana or cocaine into [Mullins'] system. He also testified that the leading cause of single tractor-trailer accidents is fatigue. The accident in question occurred at 11:20 p.m. The Full Commission gives greater weight to the opinions of Dr. McBay.

11. Defendants have failed to produce sufficient evidence to prove that the accident which resulted in [Mullins'] death was proximately caused by [Mullins] being under the influence of cocaine or marijuana or that he was intoxicated at the time it occurred.

## II. Issues

The only question raised on appeal is whether defendants presented sufficient competent evidence to establish the affirmative defense found in N.C.G.S § 97-12, which provides that:

No compensation shall be payable if the injury or death of the employee was proximately caused by:

(2) His being under the influence of any controlled substance listed in the North Carolina Controlled Substances Act,

G.S. 90-86, et seq., where such controlled substance was not by prescription by a practitioner.

N.C. Gen. Stat. § 97-12(2) (1999).

The employer bears the burden of proof for the affirmative defense of intoxication or impairment. *Harvey v. Raleigh Police Dept.*, 85 N.C. App. 540, 545, 355 S.E.2d 147, 150 (1987). The employer is not required to disprove all other possible causes or that intoxication or impairment was the sole proximate cause of the employee's injury. *Sidney v. Raleigh Paving & Patching, Inc.*, 109 N.C. App. 254, 256, 426 S.E.2d 424, 426 (1993) (citing *Anderson v. Century Data Sys., Inc.*, 71 N.C. App. 540, 322 S.E.2d 638 (1984)). The employer is required to prove only that it is more probable than not that intoxication or impairment was a cause in fact of the injury. *Id.*

Appellate review of an opinion and award by the Commission is limited to two questions: "(1) [w]hether or not there was any competent evidence before the Commission to support its findings of fact; and (2) whether or not the findings of fact of the Commission justify its legal conclusions and decision." *Inscoe v. DeRose Indus., Inc.*, 292 N.C. 210, 216, 232 S.E.2d 449, 452 (1977). The Commission is "the sole judge of the credibility of the witnesses and the weight to be given their testimony." *Melton v. City of Rocky Mount*, 118 N.C. App. 249, 255, 454 S.E.2d 704, 708 (1995) (citation omitted).

The evidence presented in this case raised two issues for the Commission's determination: (1) whether Mullins was under the influence of controlled substances at the time of the fatal accident and if so, (2) whether Mullins' impairment was a proximate cause of the accident. Defendants contend that the findings of the Commission were not based on competent evidence and that the Commission failed to make specific findings regarding crucial facts and resolve all the issues raised. We conclude that competent evidence existed in the record to establish the defense of intoxication. We reverse the opinion and award and remand to the Commission for findings of fact resolving all the issues raised by the evidence in this case.

## A. Impairment

"It is the duty of the Commission to make findings of fact resolving all issues raised by the evidence given in the case." *Anderson v. Century Data Sys., Inc.*, 71 N.C. App. 540, 544, 322 S.E.2d 638, 640 (1984). The Commission did not make an express finding on the issue of whether Mullins was impaired. The Commission found and con-

cluded that defendants failed to produce evidence that Mullins was impaired at the time of the accident.

The Commission did not give any weight to the opinion of Dr. Davis that Mullins was impaired at the time of the accident. The Commission found that Dr. Davis' opinions were based on inadequate facts, stating that Dr. Davis "based his opinion on a review of only four documents," did not know "decedent's height, weight, or medical history," and did not know "when cocaine was introduced to decedent's system or how much was introduced." There is a lack of competent evidence to support this finding by the Commission.

Dr. Davis specifically testified that Mullins' height and weight were totally irrelevant to absorption of cocaine and whether he was impaired. Dr. Davis further testified that the only thing relevant to the determination of impairment is the amount of metabolite present in Mullins' urine. The record here is completely void of any testimony that height, weight, and medical history are necessary facts to determine impairment.

Additionally, Dr. Davis testified that he examined more than the four documents found by the Commission. Dr. Davis testified that he reviewed all of the documents introduced into evidence, which included Mullins' employment records and the case reports. The Commission's finding is not supported by any competent evidence, thus the opinion testimony of Dr. Davis should have been considered by the Commission.

N.C.G.S. § 97-12(2) denies compensation when "the injury or death of the employee was proximately caused by his being under the influence of any controlled substances . . . ." The Legislature's intention was to relieve an employer of the obligation to pay compensation when the accident giving rise to the employee's injuries or death is proximately caused by his intoxication, being under the influence of a controlled substance, or his willful intention to injure or kill. *See Anderson*, 71 N.C. App. at 547, 322 S.E.2d at 642. Plaintiff recites the often quoted rule that the Worker's Compensation Act should be liberally construed in favor of the claimant to effectuate the intent of the statute. *See Dayal v. Provident Life & Accident Ins. Co.*, 71 N.C. App. 131, 132, 321 S.E.2d 452, 453 (1984). We have previously stated that this rule "does not license either the Commission or the courts to disregard the manifest intention of the Legislature in enacting G.S. § 97-12. *Anderson*, 71 N.C. App. at 547, 322 S.E.2d at 642.

The exception within the Workers' Compensation Act reinforces our State's policy of "no tolerance" with respect to driving while intoxicated or impaired. *See* N.C. Gen. Stat. § 20-138.1(a)(2) (1999) (blood alcohol level for the offense of impaired driving lowered from .10 to .08 or more). This is especially true for commercial vehicles as was involved here. *See* N.C. Gen. Stat. § 20-138.2(a)(2) (1999) (blood alcohol level for the offense of impaired driving in commercial vehicle is .04 or more).

The General Assembly could have required that testing show a certain level of illegal drugs necessary for impairment, as it has required with alcohol under the impaired driving statutes. *See* N.C. Gen. Stat. §§ 20-138.1(a) and 20-138.2(a). Such a requirement was not enacted.

We have reviewed the statutes and cases of other states which reinforce their "no tolerance" for driving while intoxicated from alcohol or impaired from controlled substances. These states apply a presumption of impairment and shift the burden of proof to plaintiff to show that he was not intoxicated or impaired or that his intoxication or impairment was not a contributing cause of the accident. *See Ross v. Ellard Constr. Co., Inc.*, 686 So.2d 1190, 119-93 (Ala. Civ. App. 1996) (statute provides that employee who tests positive for drug use is conclusively presumed to have been under the influence of drugs but "conclusive presumption" does not apply to the issue of causation); *Bice v. Waterloo Industries, Inc.*, 26 S.W.3d 129 (Ark. App. 2000) (statute provides that the presence of illegal drugs creates a rebuttable presumption that the injury was substantially occasioned by their use); *Lastinger v. Mill & Machinery, Inc.*, 512 S.E.2d 327, 328 (Ga. Ct. App. 1999) (statute provides in part that where a chemical analysis reveals the presence of any marijuana or controlled substance, there is a rebuttable presumption that the injury was due to the ingestion of drugs); *Stepanek v. Rinker Materials Corp.*, 697 So.2d 200 (Fla. Dist. Ct. App. 1997) (statute provides a rebuttable presumption that employee's intoxication or impairment primarily caused his injury); *Williams v. Louisiana Coca-Cola Co.*, 652 So.2d 108, 111 (La. App. 1995) (statute provides that the use of a non-prescribed controlled substance creates a presumption of intoxication or impairment and causation, with the burden of proof shifting to the employee to prove that intoxication or impairment was not a contributing cause); *but see Seamans v. Maaco Auto Painting & Bodyworks*, 918 P.2d 1192, 1197 (Idaho 1996) (deletion of the burden of proof language does not place the burden of disproving intoxica-

tion upon the claimant, had the legislature intended such an allocation of the burden, it could have so stated).

Accordingly, we apply a rebuttable presumption under N.C.G.S. § 97-12. Once the employer proves use of a non-prescribed controlled substance, it is presumed that the employee was impaired. Once the employer presents competent evidence that the impairment was a proximate cause of the accident, the burden shifts to the employee to rebut the presumption of impairment or that impairment was not a contributing proximate cause of the accident.

Here, the evidence is undisputed that cocaine and marijuana were present in Mullins' system at the time of his death. Plaintiff failed to offer any competent evidence that Mullins was not impaired at the time of the accident. The testimony of Dr. McBay offered by plaintiff merely opines that it is impossible to determine whether Mullins was or was not impaired. We reverse the decision of the Commission and remand for findings of fact and resolution of the issue of impairment.

## B. Proximate Cause

The Commission did not make an express finding of fact as to the proximate cause of the accident. Upon examination of the findings made, the Commission implicitly found that the proximate cause of the accident was fatigue. We hold that there is a lack of sufficient competent evidence to support this finding by the Commission and reverse the decision. *See Strickland v. Carolina Classics Catfish, Inc.*, 119 N.C. App. 97, 105, 458 S.E.2d 10, 15 (1995) (Greene J., dissenting) (citing *Hildebrand v. Furniture Co.*, 212 N.C. 100, 109, 193 S.E. 294, 300 (1937) (findings by the Commission which lack sufficient competent evidence to support them will be set aside)).

The Commission relied on the testimony of Dr. McBay, that the leading cause of single tractor-trailer accidents is fatigue, and the fact that the accident occurred at 11:20 p.m. This is nothing more than speculation and cannot support a finding of fatigue as the proximate cause of the accident. *See Aycock v. Cooper*, 202 N.C. 500, 504, 163 S.E. 569, 570 (1932) (there must be evidence of "sufficient probative force" to support the Commission's findings); *Strickland*, 119 N.C. App. at 105, 458 S.E.2d at 15 (Commission's finding cannot be based on speculation and conjecture) (citations omitted). Dr. McBay was not tendered as an expert in accident reconstruction or in-

vestigation, he did not rely on this causation testimony to form his opinions, and his testimony was void of any facts to support this opinion as to causation.

The Commission further found that defendants failed to meet their burden of proof that Mullins' death was proximately caused by his being under the influence of cocaine or marijuana. We hold that there is a lack of sufficient competent evidence to support this finding by the Commission.

In the present case, the employer offered substantial evidence tending to show that the accident was proximately caused by Mullins' impairment from cocaine, a controlled substance. The coroner's report and a lab test at Columbus Regional Hospital indicated cocaine in Mullins' urine. A separate confirmation test by Nichol's Institute in San Diego, California, indicated cocaine and marijuana present in Mullins' urine. Two eyewitnesses reported that Mullins was traveling between sixty-five and seventy miles per hour and that the truck was weaving all over the road for approximately forty-five minutes before the accident. Both Dr. Davis and Dr. McBay testified that cocaine can effect body movement, awareness, judgment, and motivation. Both experts testified that cocaine is metabolized out of the blood within forty-five minutes to an hour and a half. For this reason, Dr. Davis opined that only urine tests have a predictive value for the presence of cocaine. Dr. Davis further testified that, with a level of at least 300 nanograms, Mullins was under the influence of cocaine and that his impairment was a cause of the accident. Finally, both experts testified that an individual coming off of the effects of cocaine can have a "craving for sleep."

Plaintiff failed to offer any competent evidence that the cause of the accident resulting in death was other than Mullins' impairment from controlled substances. We agree with the statement made by Commissioner Riggsbee in her dissenting opinion, that Dr. McBay's testimony regarding a cause of trucking accidents in general does not "provide grounds for rejecting the likely causal connection between the accident and the controlled substances in decedent's system." We reverse the decision of the Commission and remand for findings of fact and resolution of the issue of whether Mullins' impairment was a proximate cause of the accident.

We conclude that defendants produced substantial competent evidence which supports a finding that Mullins was under the influence of a controlled substance and that Mullins' impairment was

**WILLEY v. WILLIAMSON PRODUCE**

[149 N.C. App. 74 (2002)]

more probably than not a cause of the accident resulting in the employee's death. *See Coleman v. City of Winston-Salem*, 57 N.C. App. 137, 291 S.E.2d 155 (remanded to the Commission for more specific findings where the Commission found only that there was "no evidence that the death was caused by intoxication," and the record contained "ample evidence" that the employee's intoxication proximately caused his death), *disc. review denied*, 306 N.C. 382, 294 S.E.2d 206 (1982), *cert. denied*, 459 U.S. 1112, 74 L. Ed. 2d 963 (1983). Defendants are not required to prove that Mullins' impairment was the sole proximate cause of the accident. *Rorie v. Holly Farms Poultry, Co.*, 306 N.C. 706, 711, 295 S.E.2d 458, 462 (1982).

## C. Specific Findings Regarding Crucial Facts

Defendants further contend that the Commission failed to make specific findings with regard to crucial facts. We agree. *See Morgan v. Thomasville Furniture Indus., Inc.*, 2 N.C. App. 126, 128, 162 S.E.2d 619, 620 (1968).

The Commission failed to address the testimony of the two eyewitnesses to the accident and enter a finding of fact with respect to their testimony. The Commission should have considered and made findings with respect to the expert testimony of Dr. Davis. *See Coleman*, 57 N.C. App. at 141, 291 S.E.2d at 157 (Commission must consider all of the evidence, make definitive findings and proper conclusions therefrom). Additionally, there were no findings made by the Commission with respect to the lack of evidence presented by plaintiff. Specifically there was no evidence that Mullins was without sleep before the accident and that there were no adverse or dangerous driving conditions at the time of the accident. The findings of fact of the Commission should "tell the full story of the event giving rise to the claim for compensation." *Thomason v. Red Bird Cab Co., Inc.*, 235 N.C. 602, 605, 70 S.E.2d 706, 709 (1952).

The opinion and award of the Commission is vacated. The case is remanded for a new hearing consistent with this opinion.

Reversed and remanded.

Judge HUNTER concurs.

Judge GREENE dissents.

GREENE, Judge, dissenting.

As I believe the majority has not properly applied the competent evidence standard required by this Court in its review of decisions by the North Carolina Industrial Commission and has ignored the burden imposed on defendants by N.C. Gen. Stat. § 97-12, I respectfully dissent. I restate the facts in order to aid the analysis below.

On 17 November 1997, William Henry Mullins (Mullins) died when his truck ran off the road and overturned during the course and in the scope of his employment with Williamson Produce.[1] A post mortem urinary drug screen indicated the presence cocaine and marijuana metabolites, the waste products of cocaine and marijuana, in Mullins' system. Deposition testimony of Dr. Arthur John McBay (McBay), an expert in forensic toxicology, revealed that based on the reports available, it was impossible to determine the actual amount of cocaine and marijuana in Mullins' system at the time of the accident. The available reports included a toxicology report of a drug screen performed on Mullins using a minimum threshold of 300 nanograms of cocaine metabolites present in a person's urine as the cut-off rate for a positive test for cocaine.[2] McBay stated that it was impossible to establish from Mullins' urinary drug screen whether either drug was introduced into Mullins' system within twelve hours of the accident or how they were administered into his system. McBay explained that cocaine, depending on the quantity, can stay in a person's system for three to four days, whereas a test for marijuana can show positive for over twenty days. The pharmacological effect of the drugs, which measures the level of impairment experienced by a person, however, cannot be determined by a mere urine drug screen.

Dr. Arthur E. Davis, Jr. (Davis) testified at his deposition as an expert in pathology and toxicology. Davis had performed a documentary autopsy on Mullins by reviewing the crash report, offense/case report, coroner's verdict, death certificate, and toxicology reports. He testified that the threshold established by the federal government of 300 nanograms per millimeter is a sufficient level to have a pharmacological effect on a person. The height and weight of an individual are irrelevant when determining the absorption of cocaine into an individual's system. Moreover, a urine test is the only test to use in

---

1. The parties do not dispute this fact.

2. McBay testified he established this threshold amount for the detection of cocaine metabolites for the Department of Defense when it wanted to detect the activity of drug use, not the impairment caused by drugs.

order to determine whether cocaine is still having an effect on an individual which would impair his ability to drive. Because of the amount of cocaine metabolites found in Mullins' system, Davis found by "a reasonable [degree of] medical certainty as a physician, that [Mullins] used cocaine almost assuredly within the last six to twelve hours [prior to the accident] and that he was [at that time] still under the influence of cocaine and it was having a profound, adverse effect on his driving ability."[3]

On appeal from the deputy commissioner, the Full Commission (the Commission) found in pertinent part that:

5. A urinary drug screen was performed post mortem [on Mullins] which showed a positive screen for the metabolites for cocaine and marijuana . . . . The cut[-]off for the drug screen for the cocaine metabolite is 300 nanograms. A nanogram is a billionth of a gram. There was no evidence of the quantitative amount of the cocaine or marijuana metabolites in [Mullins'] system at the time of the accident which resulted in his death.

6. There is no evidence of when either cocaine or marijuana entered [Mullins'] system, how much was introduced or the mode of administration. It is possible for an individual to test positive for the cocaine metabolite for 3 or 4 days after it is introduced [in]to their system. It is possible to test positive for the marijuana metabolite for as long as 20 days after it is introduced [in]to an individual's system.

7. Based on the post mortem urine drug screen performed on [Mullins'] body, there is no scientific basis for determining what impact, if any, the drug metabolites had on [Mullins] at the time of the accident. Drug screens are only meant to demonstrate an analytically significant amount of a metabolite, not a pharmacologically significant amount. An analytically significant amount simply means an amount that can be determined with certainty. A pharmacologically significant amount is an amount that has a measurable effect on an individual. Therefore, it cannot be shown that 300 nanograms of the metabolite of cocaine in [Mullins'] urine had a measurable pharmacological effect on him at the time of the accident.

---

3. Davis also expressed an opinion that Mullins was under the toxic effect of marijuana at the time of the accident. Because Davis gave no factual basis for this conclusion, this analysis focuses solely on the possible impairment a person might suffer with 300 nanograms of cocaine metabolites in his system.

WILLEY v. WILLIAMSON PRODUCE

[149 N.C. App. 74 (2002)]

8. The opinion of [Davis] that [Mullins] was impaired at the time of the accident is not given any weight. [Davis] based his opinion on a review of only four documents. He did not know [Mullins'] height, weight, medical history, when cocaine was introduced [in]to [Mullins'] system or how much was introduced. As such, [Davis'] opinions regarding [Mullins'] potential impairment or intoxication at the time of the accident were given on an inadequate factual basis to be accepted. [Davis] provided no opinion on the effect of the marijuana metabolites on [Mullins] at the time of the accident.

. . . .

10. [McBay] has extensive experience in the area of forensic toxicology and has served as the Chief Toxicologist at the Office of Chief Medical Examiner in North Carolina. [McBay] testified that based on the data obtained subsequent to [Mullins'] death that it is impossible to determine the time and means of administration of marijuana or cocaine into [Mullins'] system. . . . [The Commission] gives great weight to the opinions of [McBay].

11. Defendants have failed to produce sufficient evidence to prove that the accident which resulted in [Mullins'] death was proximately caused by [Mullins] being under the influence of cocaine or marijuana or that he was intoxicated at the time it occurred.

The Commission subsequently concluded that Plaintiff was not barred from recovering compensation because defendants had not met their burden under N.C. Gen. Stat. § 97-12 to show the accident was proximately caused by a drug impairment.

---

The dispositive issue is whether there was competent evidence to support the Commission's findings that "it cannot be shown that 300 nanograms of the metabolite of cocaine in [Mullins'] urine had a measurable pharmacological effect on him at the time of the accident," and defendants therefore did not "produce sufficient evidence to prove that the accident . . . was proximately caused by [Mullins] being under the influence of cocaine."

Appellate review of an opinion and award by the Commission "is limited to a determination of (1) whether the findings of fact are supported by competent evidence, and (2) whether the conclusions of law are supported by the findings." *Barham v. Food World*, 300 N.C.

329, 331, 266 S.E.2d 676, 678, (1980). This Court " 'does not have the right to weigh the evidence and decide the issue on the basis of its weight. The [C]ourt's duty goes no further than to determine whether the record contains any evidence tending to support the finding.' " *Deese v. Champion Int'l Corp.*, 352 N.C. 109, 115, 530 S.E.2d 549, 552 (2000) (quoting *Anderson v. Lincoln Constr. Co.*, 265 N.C. 431, 434, 144 S.E.2d 272, 274 (1965)). "[T]his Court is bound by such evidence, even though there is [other] evidence that would have supported a finding to the contrary." *Porterfield v. RPC Corp.*, 47 N.C. App. 140, 144, 266 S.E.2d 760, 762 (1980). Moreover, the Commission is "the sole judge of the credibility of the witnesses and the weight to be given their testimony." *Melton v. City of Rocky Mount*, 118 N.C. App. 249, 255, 454 S.E.2d 704, 708 (citation omitted), *disc. review denied*, 340 N.C. 568, 460 S.E.2d 319 (1995).

Under the Workers' Compensation Act, "[n]o compensation shall be payable if the injury or death to the employee was proximately caused by . . . [h]is being under the influence of any controlled substance." N.C.G.S. § 97-12 (1999). The burden rests on the employer to prove that an employee's intoxication or impairment was "more probably than not a cause in fact of the accident resulting in injury to the employee." *Anderson v. Century Data Systems*, 71 N.C. App. 540, 545, 322 S.E.2d 638, 641 (1984), *cert. denied*, 313 N.C. 327, 327 S.E.2d 887 (1985).

In this case, the Commission was presented with conflicting expert testimony regarding the question of whether Mullins' driving ability was impaired by drugs at the time of his accident. Davis testified 300 nanograms of cocaine metabolites found in a person's urine indicates impairment. McBay, on the other hand, stated it was impossible to determine a person's impairment from a urinary drug screen. Thus, in accepting one expert's opinion, the Commission necessarily had to reject the testimony of the other expert. Accordingly, if the Commission believed McBay's testimony that it was impossible to establish from the urinary drug screen whether cocaine was introduced into Mullins' system within twelve hours of the accident, the Commission had to find that Davis could not have known "when cocaine was introduced [in]to [Mullins'] system," thus rejecting Davis' testimony "that [Mullins] used cocaine almost assuredly within the last six to twelve hours" prior to the accident. The Commission also accepted McBay's testimony that it was impossible to determine the actual amount of cocaine in Mullins' system at the time of the

WILLEY v. WILLIAMSON PRODUCE

[149 N.C. App. 74 (2002)]

accident. Consequently, the Commission was justified in rejecting Davis' opinion on the basis that "[h]e did not know . . . when cocaine was introduced [in]to [Mullins'] system or how much was introduced."

The majority holds that Davis' testimony presented competent evidence. Even if this were so, it would not warrant a reversal of the Commission's opinion and award. *See Porterfield*, 47 N.C. App. at 144, 266 S.E.2d at 762 ("[i]f there is any evidence of substance which directly or by reasonable inference tends to support the findings, this Court is bound by such evidence, even though there is evidence that would have supported a finding to the contrary"). McBay's experience with the threshold for the cocaine metabolites and his testimony that impairment could not be established by a urinary drug screen using this threshold was sufficient to support the Commission's finding that "it cannot be shown that 300 nanograms of the metabolite of cocaine in [Mullins'] urine had a measurable pharmacological effect on him at the time of the accident," and in turn supported the finding that defendants failed to meet their burden under section 97-12 to show Mullins' death "was proximately caused by [his] being under the influence of cocaine."

The majority finds significance in the fact that the Commission noted in its findings of fact that the accident occurred at 11:20 p.m. and that McBay testified to fatigue as the leading cause of single tractor-trailer accidents. The majority reads these findings as an implicit finding of causation. Nowhere in its opinion and award, however, does the Commission make a finding as to what caused the accident. The only finding on the issue of causation relates to defendants' failure to show that impairment was more probable than not a cause in fact of the accident. The majority's reliance on the above findings in reversing the Commission's opinion and award is thus misplaced because it ignores the burden on the party asserting the defense of impairment under section 97-12.[4] *See Anderson*, 71 N.C. App. at 545,

---

4. The majority reads section 97-12 as merely imposing on the employer the burden of proving the use of a non-prescribed controlled substance by the employee. Once the employer has met this requirement, the majority holds, the burden shifts to the employee to prove that the use of the controlled substance was not a contributing proximate cause of the accident. In support of its position, the majority cites several statutes enacted by other states that provide for a rebuttable presumption of impairment sufficient to satisfy the causation requirement once intoxication or the presence of a controlled substance has been shown. While the trend reflected in these statutes may support a legislative change in our laws, section 97-12, the statute in effect in North Carolina at this time, does not include such language. The plain language of our statute dictates that for "an injury or death" to be "proximately caused by" an employee

322 S.E.2d at 641. The Commission's only obligation was to find whether defendants had met their burden, and the Commission did so based on competent evidence. The issue of fatigue played no role in this analysis.

Finally, in holding there is a lack of sufficient competent evidence to support the Commission's finding as to defendants' failure to meet their burden of proof, the majority focuses on the competence of Davis' testimony and the accounts of the eyewitnesses. As noted above, this analysis does not comply with our standard of review on appeal, which is to decide whether there is any competent evidence to support the Commission's findings, not whether there was any competent evidence to support a different finding. *See Porterfield*, 47 N.C. App. at 144, 266 S.E.2d at 762. In weighing expert testimony, issues of credibility remain within the sole discretion of the Commission and cannot be second-guessed on appeal. *Melton*, 118 N.C. App. at 255, 454 S.E.2d at 708.

Because McBay's testimony supports the Commission's finding that impairment could not be established and therefore defendants failed to meet their burden under section 97-12, I would uphold the Commission's opinion and award.

---

"being under the influence of any controlled substance," the controlled substance must have an impairing effect on the employee. N.C.G.S. § 97-12. Without a showing of impairment, there cannot be causation, and without a showing of causation, the employer has not sustained *its* burden under the statute. *See Anderson*, 71 N.C. App. at 545, 322 S.E.2d at 641.