* * * *
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Harris and the briefs and arguments before the Full Commission. The appealing parties have not shown good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the opinion and award, except for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Harris, with modifications.
 * * * *
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. It is stipulated that the parties are subject to the North Carolina Workers' Compensation Act, Defendant-Employer employing the requisite number of employees to be bound under the provisions of said Act at the time of the incident.
2. All parties have been properly designated and there is no question as to misjoinder or nonjoinder of parties.
3. Plaintiff sustained an injury on October 26, 2004, when he fell from a scaffold.
4. An employment relationship existed between Plaintiff and Defendant-Employer on October 26, 2004.
5. Builders Mutual Insurance Company was the carrier of workers' compensation insurance for Defendant-Employer on October 26, 2004. *Page 3 
6. Plaintiff's average weekly wage and compensation rate is to be determined.
7. Plaintiff has been treated by the following medical providers: Johnston Memorial Hospital and Dr. Richard Alioto.
 * * * * EVIDENCE
The parties stipulated into evidence the following exhibits:
 a. Stipulated Exhibit 1: Medical records, supplemented by a letter from Plaintiff's counsel dated December 1, 2005 and attachments thereto.
 b. Stipulated Exhibit 2: I.C. Forms
 c. Stipulated Exhibit 3: Medical bills
 d. Stipulated Exhibit 4: Executed Pre-Trial Agreement
 e. Stipulated Exhibit 5: Report and records from Quest Diagnostics, Inc.
2. The following documents were accepted into evidence as Plaintiff's exhibits:
 a. Plaintiff's Exhibit 1: Photographs of scaffolding
3. The following documents were accepted into evidence as Defendants' exhibits:
 a. Defendants' Exhibit 1: Photograph of scaffolding
 b. Defendants' Exhibit 2: Photograph of scaffolding
4. The following individuals testified at the hearing before the Deputy Commissioner:
 a. Luther Jackson, Jr.
 b. Ronnie L. Stewart
 c. Jerry Paul Moore
 d. Sherwood Thomas Hill *Page 4 
 e. Phillip Cary Seckar
5. The following depositions were received into evidence following the hearing before the Deputy Commissioner:
 a. Dr. Richard Alioto
 b. Dr. Shayne C. Gad (with Defendants' Exhibits 1-3)
 c. Dr. Brian McMillen (with Plaintiff's Exhibits 1 2 and Defendants' Exhibits 1 2)
 * * * * NOTICE OF LEGISLATIVE AMENDMENT
Section 2 of Chapter 448 of the 2005 Session Laws amended N.C. Gen. Stat. § 97-12 to create a rebuttable presumption of impairment from the use of alcohol or a controlled substance. As this amendment was not in effect at the time of plaintiff's work-related injury by accident on October 26, 2004, this matter will be decided without the application of the presumption.
 * * * *
Based upon all the competent evidence of record and the reasonable inferences arising therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, Plaintiff was 44 years old and had an eighth grade education and limited reading and writing skills. During his working life, plaintiff has mostly done construction work, but he possesses no specialized trade licenses. *Page 5 
2. As of October 26, 2004, plaintiff had been employed with Defendant-Employer for over one year. As of that date, Plaintiff was earning between $12.00 and $12.50 per hour and was working 35 to 40 hours per week, with no overtime.
3. On October 26, 2004, the date of injury in this case, a co-worker picked up Plaintiff at his residence at around 5 a.m., and the two then drove to the home of S.T. Hill, Defendant-Employer's owner. At Hill's house, Plaintiff got into a work van with his supervisor Jerry Moore and another co-worker, Ronnie Stewart. Moore then drove the van as the three went to the work site near Chapel Hill.
4. Plaintiff, Moore, and Stewart arrived at the work site at around 6:30 a.m. They immediately got to work on one of Defendant-Employer's residential home siding jobs that was in progress.
5. In order to do the job, Plaintiff had to stand on scaffolding that was about five feet off the ground. He was on scaffolding all morning. Just before the lunch break, Plaintiff, Moore, and Stewart took down the scaffolding they had used in the morning and re-assembled it on a different section of the house so it would be ready for the afternoon's work. Plaintiff, Moore, and Stewart all took part in moving and re-assembling the scaffolding. The crew then took about one-half hour for lunch.
6. Upon returning from the lunch break, Plaintiff and Stewart got onto the scaffolding at about 1 p.m. to continue the siding work. After they had been on the scaffolding for about five minutes, either Plaintiff or Stewart shifted his weight by moving toward the middle of the walk board on which the two were standing, the walk board flipped up, and both Plaintiff and Stewart toppled off the scaffolding to the ground. *Page 6 
7. When Plaintiff fell, his left foot went through a foundation vent, and he suffered a severe left ankle injury. Stewart broke his ankle also.
8. Although the proper technique for assembling scaffolding is to chain down the walk boards so they cannot flip up with weight shifts, there were no chains available on the job site that day to chain down the walk boards. Further, while the assembly and use of the scaffolding in this fashion may not have reflected good judgment, it was not unusual for scaffolding to have been set up and used in this fashion on a construction job site. There was nothing unusual about the scaffolding set-up on October 26, 2004, and after the moving and re-assembly just before lunch, the scaffolding was essentially in the same condition at the time of the accident as it had been while Plaintiff and Stewart worked on it without incident all morning.
9. Following the accident, Moore took Plaintiff and Stewart to Johnston Memorial Hospital, near where they all resided.
10. Plaintiff did not display any unusual behavior all day on October 26, 2004.
11. Upon presenting to the emergency room at Johnston Memorial Hospital, Plaintiff was admitted, and he underwent an open reduction internal fixation procedure on his left ankle with Dr. Richard Alioto on October 29, 2004. During the procedure, screws were put in place, and Plaintiff's left ankle was placed in a cast.
12. Following his release from the hospital on October 31, 2004, Plaintiff continued to follow up with Dr. Alioto over the next several months. On November 4, 2004, Dr. Alioto wrote Plaintiff out of work entirely, and on January 6, 2005, Dr. Alito reiterated that Plaintiff was to remain out of work. On June 6, 2005, Dr. Alioto wrote that Plaintiff could do sedentary work with no standing or walking, and on August 8, 2005, Dr. Alioto continued the sedentary work restriction for the following three months. *Page 7 
13. On November 7, 2005, Dr. Alioto wrote that Plaintiff could return to work with permanent restrictions of no jumping, climbing or walking on uneven surfaces, and no carrying more than 50 pounds.
14. At about 5:42 p.m. on the date of the accident, Plaintiff submitted a urine sample at the hospital for routine drug testing. This sample was analyzed by Quest Diagnostics, Inc. in Atlanta and tested positive for cocaine metabolite, at the level of 1785 nanograms per milliliter of urine.
15. At the hearing before the Deputy Commissioner, when asked by defense counsel, "Have you ever used cocaine?" Plaintiff invoked his Fifth Amendment right against self-incrimination and refused to provide a substantive answer to the question. Defendants did not ask any further questions about whether Plaintiff had used cocaine on or around the date of the accident.
16. Plaintiff has not returned to work in any fashion since October 26, 2004. Plaintiff has inquired of Hill whether he could return to work with Defendant-Employer, but Hill has told him he could not do so because of the positive drug test.
17. Defendants' expert witness, Shayne C. Gad, Ph.D., a consultant, opined that Plaintiff was most likely impaired by cocaine use at the time of the accident and that such impairment was a proximate cause of the accident. Dr. Gad based his opinion on three factors: (1) the poor judgment Dr. Gad said Plaintiff displayed in assembling and using the scaffolding in the fashion in which he did; (2) Dr. Gad's opinion that, based on the level of metabolite found in Plaintiff's urine, Plaintiff had used cocaine about five hours before the sample was taken (during the lunch break, in Dr. Gad's estimation); and (3) the witnesses' lack of observation of any signs *Page 8 
of cocaine use or intoxication by Plaintiff when he was first picked up on the morning of the accident.
18. Dr. Gad also testified that if Plaintiff had been under the influence of cocaine on October 26, 2004, there should have been observable changes in his behavior on that date.
19. The Full Commission finds that Dr. Gad's testimony was speculative and based on faulty assumptions. Dr. Gad hypothesized that Plaintiff used cocaine during the lunch break, attaching great significance to what he believed was Plaintiff's "bad judgment" in assembling and using the scaffolding in the fashion in which he did; however, Plaintiff, along with Moore (his supervisor) and Stewart, set up the scaffoldingbefore lunch, and there has been no suggestion that either Moore or Stewart was using cocaine on the date of the accident. Furthermore, while it is true that the witnesses observed no signs of cocaine use or intoxication by plaintiff when he was first picked up on the morning of the accident, there is also no testimony on this record that Plaintiff acted strangely at any time on the date of the accident, including either at or after lunch.
20. Plaintiff's expert, Dr. Brian McMillen, a professor of toxicology and pharmacology at East Carolina University, testified that he disagreed with Dr. Gad's methodology and conclusions. Dr. McMillen testified that the level of metabolite found in Plaintiff's urine was definitely a positive result but that that result, alone, did not indicate when Plaintiff had been under the intoxicating effect of cocaine. The greater the amount of cocaine that Plaintiff consumed at some point prior to providing the urine sample, the greater the period of time during which a 1785-or-greater level would be found in Plaintiff's urine (in other words, if Plaintiff had gone on a binge three days before the sampling, he still might have had a 1785 level at the time of the sampling). Because, as Dr. Gad himself acknowledged, the intoxicating *Page 9 
effects of cocaine last for only a few hours after use, the mere measurement of metabolite in the urine (which remains for a considerable amount of time after the intoxicating effects of cocaine have worn off) is insufficient to determine the particular time of intoxication.
21. Based on Dr. McMillen's review of the evidence, he could not conclude when Plaintiff had last ingested cocaine (other than saying Plaintiff had likely done so at some point during the 48-to 72-hour period before the sampling) nor could he conclude that Plaintiff was impaired by cocaine use at the time of the accident around 1 p.m. on October 26, 2004.
22. The Full Commission finds Dr. McMillen's testimony to be much more cogent, consistent, and convincing than Dr. Gad's, and thus affords greater weight to Dr. McMillen's testimony than Dr. Gad's.
23. Defendants have not shown that Plaintiff was intoxicated by, impaired by, or under the influence of cocaine at the time of his accident in this case. Further, even if Plaintiff was under the influence of cocaine at the time of the accident, Defendants have not shown that any impairment resulting therefrom proximately caused, or was a cause in fact of, the accident.
24. As Dr. Alioto testified, Plaintiff's injury was an "extremely severe" fracture. As Dr. Alioto further testified, Plaintiff still has "significant impairment," and he is sure that Plaintiff will eventually receive a permanent impairment rating for the left ankle injury. As Dr. Alioto further testified, Plaintiff likely will need further treatment for his left ankle injury.
25. The treatment that Dr. Alioto and Johnston Memorial Hospital have rendered for Plaintiff's left ankle injury that he sustained on October 26, 2004, has been reasonably necessary to effect a cure, provide relief, and/or lessen the period of Plaintiff's disability.
26. Defendants provided a Form 22 that contains insufficient information to ascertain Plaintiff's average weekly wage, in that the dates on which Plaintiff worked are not marked. *Page 10 
Likewise, the testimony in this case does not provide sufficient information to formulate Plaintiff's average weekly wage.
27. Plaintiff has shown that he was totally disabled within the meaning of N.C. Gen. Stat. § 97-29 from October 27, 2004, through November 7, 2005, when Dr. Alioto wrote Plaintiff's permanent work restrictions. During this time, Dr. Alioto either had written Plaintiff entirely out of work or had placed him on sedentary work restrictions. Based on Plaintiff's work experience and vocational and educational limitations, it would have been futile for Plaintiff to seek to obtain physically suitable employment during the time that he was under sedentary work restrictions.
28. However, from November 7, 2005, onward, Plaintiff has been under less stringent permanent work restrictions, and he may be capable of finding physically suitable employment commensurate with his work experience and vocational and educational levels. Plaintiff did not provide any evidence showing that he has tried and been unsuccessful in any efforts to return to work under his permanent work restrictions, nor did he show that he has returned to work since November 7, 2005, making less than he did with Defendant-Employer. As such, for the period from November 7, 2005, onward, Plaintiff has not shown that he is disabled within the meaning of N.C. Gen. Stat. §§ 97-29 or 97-30.
29. Defendants filed a motion before the Deputy Commissioner to dismiss Plaintiff's workers' compensation claim on the basis of Plaintiff's invocation of his right against self-incrimination. The Full Commission finds that Plaintiff's invocation of his right against self-incrimination in the present case did not so limit Defendants' right to defend themselves as to upset the equitable balance between those two rights, and therefore that dismissal of Plaintiff's workers' compensation claim is not appropriate. *Page 11 
 * * * *
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable injury by accident to his left ankle on October 26, 2004. N.C. Gen. Stat. § 97-2(6).
2. Defendants have failed to carry their burden of persuasion that Plaintiff's claim is barred under the provisions of N.C. Gen. Stat. § 97-12. Defendants are not entitled to a rebuttable presumption under N.C. Gen. Stat. § 97-12 that Plaintiff was under the influence of cocaine at the time of his accident, because Plaintiff's accident occurred prior to the statutory enactment of the rebuttable presumption in 2005. See Willey v. Williamson Produce, 149 N.C.App. 74, 80,562 S.E.2d 1, 10, note 4 (2002), rev'd per curiam for reasons stated indissent, 357 N.C. 41, 577 S.E.2d 622 (2003).
3. Plaintiff is entitled to have Defendants pay him temporary total disability compensation under N.C. Gen. Stat. § 97-29 for the period from October 27, 2004, through and including November 6, 2005. N.C. Gen. Stat. § 97-29.
4. Plaintiff is entitled to have Defendants pay for all the medical treatment that Plaintiff has heretofore received for his compensable left ankle injury, and he is entitled to have Defendants provide further medical treatment for said injury that will effect a cure, provide relief or lessen the period of disability. N.C. Gen. Stat. § 97-25.
5. Plaintiff's invocation of his right against self-incrimination in the present case does not warrant dismissal of his workers' compensation claim. Cantwell v. Cantwell, *Page 12 109 N.C.App. 395, 427 S.E.2d 129, disc. review improvidently allowed,335 N.C. 235, 436 S.E.2d 588 (1993).
 * * * *
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Subject to the attorney's fee provision below, Defendants shall pay Plaintiff, in a lump sum, the total amount of temporary total disability compensation owed Plaintiff for the period from October 27, 2004, through and including November 6, 2005. The parties shall make diligent, good faith efforts to agree upon a compensation rate for Plaintiff.
2. Defendants shall pay for all the medical treatment that Plaintiff has heretofore received for his compensable left ankle injury, and for further medical treatment for said injury that will effect a cure, provide relief or lessen the period of disability.
3. Dr. Alioto is hereby designated as Plaintiff's treating physician, and Defendants shall authorize and pay for the treatment that Dr. Alioto recommends for Plaintiff's compensable left ankle injury, including but not limited to diagnostic testing and referrals.
4. A reasonable attorneys' fee of 25% of the compensation due under Paragraph 1 of this award is approved for Plaintiff's counsel, and shall deducted from the lump sum due and paid directly to Plaintiff's counsel.
5. Defendants shall pay the costs.
 This the 26th day of March 2007. *Page 13 
 S/___________________ PAMELA T. YOUNG COMMISSIONER
CONCURRING:
 S/___________________ BUCK LATTIMORE CHAIRMAN
UNAVAILABLE FOR SIGNATURE:
 ___________________ THOMAS J. BOLCH COMMISSIONER