IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-298

Filed 21 May 2025

Carteret County, No. 23CRS000323-150

STATE OF NORTH CAROLINA

   v.

MICHAEL ANTHONY ASPIOTE

Appeal by defendant from judgment entered 20 July 2023 by Judge Bob R. Cherry in Carteret County Superior Court. Heard in the Court of Appeals 25 February 2025.

> *Attorney General Jeff Jackson, by Assistant Attorney General Dilcy Burton, for the State.*
>
> *Jarvis John Edgerton, IV, for defendant-appellant.*

DILLON, Chief Judge.

Defendant Michael Anthony Aspiote challenges the trial court's judgment holding him in direct criminal contempt. For the reasoning below, we reverse.

## I. Background

Defendant was found to be in direct criminal contempt by the trial court during a hearing in which he was appearing to plead guilty to unrelated charges. During the hearing, Defendant admitted to consuming an unspecified substance earlier that morning, he went into a bathroom in the courthouse and provided a urine sample, and the sample tested positive for methamphetamine.

The record shows as follows: Defendant appeared in Carteret County Superior Court to plead to charges arising from an April 2022 crime.

In the written Transcript of Plea form tendered to the trial court, Defendant responded "Yes" as to whether he was "now using or consuming alcohol, drugs, narcotics, medicines, pills, or any other substances," and he indicated that he had done so sometime that morning.

During the colloquy, Defendant responded "Yes" when the trial judge asked if he was "now using or consuming alcohol, drugs, narcotics, medicines, pills, or any other substance," and Defendant responded that he had done so "[f]irst thing [that] morning." Defendant told the trial judge that he knew how the substance(s) he had taken affected his body and that he believed that his mind was clear and that he understood the nature of the hearing. However, during the colloquy the trial judge never asked, nor did Defendant volunteer, *the type* of substance Defendant had consumed that morning.

The trial judge continued the colloquy with Defendant for several minutes, during which Defendant responded "Yes, sir" to over twenty questions regarding his understanding of the hearing and the plea he was entering. During this portion of the hearing, the trial judge did not express any concern that Defendant did not understand the nature of the hearing or the plea agreement, nor does the transcript show Defendant did not comprehend the nature of the hearing or his plea.

In any event, following the colloquy the prosecutor provided the court with the

factual basis of the charges against Defendant to which he was pleading. The trial judge then allowed the victim to speak at length uninterrupted (approximately six pages of the transcript), who painted Defendant in a negative light.

After hearing from the victim, the trial judge announced he would require Defendant to be screened for drug use before deciding whether to accept the plea. At about noon, Defendant was led out of the courtroom to provide a urine sample, during which time the hearing stood at ease. When Defendant failed to provide a urine sample by 1:21 p.m., the trial judge announced a lunch break. At 2:31 p.m., the probation officer notified the trial judge Defendant had provided a sample during the break and that the sample tested positive for methamphetamine.

The trial judge then announced he was not going to accept Defendant's plea, explaining that "the plea was not understandingly, knowingly and intelligently entered into because [Defendant had just tested] positive for an impairing substance."

The trial court then found Defendant in direct criminal contempt for delaying the court's proceedings and sentenced Defendant to twenty days in jail.

## II. Analysis

On appeal, Defendant argues the trial court erred in holding him in direct criminal contempt. We agree.

"[O]ur standard of review for contempt cases is whether there is competent evidence to support the trial court's findings of fact and whether the findings support the conclusions of law and ensuing judgment." *State v. Phair*, 193 N.C. App. 591, 593

(2008) (quotations and citations omitted).  Conclusions of law are reviewed *de novo*. *See State v. Biber*, 365 N.C. 162, 168 (2011).

Under our General Statutes, a defendant may be held in criminal contempt based on "[w]illful behavior committed during the sitting of a court and directly tending to interrupt its proceedings[,]" and "[w]illful or grossly negligent failure to comply with schedules and practices of the court resulting in substantial interference with the business of the court."  N.C.G.S. §§ 5A-11(a)(1), (7).

Criminal contempt may be either "direct" or "indirect."  N.C.G.S. § 5A-13. "Direct" criminal contempt occurs where the defendant's contemptuous act delaying or interfering with court proceedings was committed "within the sight or hearing of a presiding judicial officer" *and* within or in the immediate proximity of the courtroom.  *Id.  See also O'Briant v. O'Briant*, 313 N.C. 432, 435−36 (1985).  A trial judge who observes an act of direct criminal contempt may himself punish the defendant summarily.  N.C.G.S. § 5A-13.

"Indirect" criminal contempt occurs where a defendant violates a court order outside the presence of a court proceeding.  *Id.*  A trial judge may not proceed summarily against a defendant suspected of indirect criminal contempt, but rather a hearing may only be held after the defendant is afforded "a reasonable time" to prepare.  *Id.* § 5A-15(a).

In his order, the trial judge held Defendant in *direct* criminal contempt in a summary proceeding based on the following finding:

> Defendant tested positive for methamphetamine, and [the] court inquired whether defendant would test positive and defendant said he would not. This inquiry occurred after the plea was taken but before sentence was given. After waiting more than 2 hours, [Defendant tested positive] for methamphetamine, so plea was stricken.

It appears the trial court held Defendant in direct criminal contempt for lying that he would not test positive for a controlled substance, thus wasting the court's time having to wait for Defendant to complete a drug test.

However, nowhere in the record does it show that Defendant ever represented to the trial judge he would not test positive for a controlling substance. He was never asked that question. Rather, the record shows Defendant *admitted* to ingesting a substance earlier that morning. He never was asked or stated the type of substance he ingested. During the colloquy, he did state his mind was clear and that, even though he had ingested a substance, he understood the nature of the proceedings and the effect of his "no contest" plea to certain criminal charges. Further, though Defendant tested positive for methamphetamine, there is nothing in the record to indicate that Defendant was under the influence of that drug during the hearing.

Our Supreme Court has held that the fact that one has tested positive for an impairing substance—in that case, cocaine and marijuana—is not conclusive proof the individual was under the influence of that substance at the time of the test. *Willey v. Williamson Produce*, 357 N.C. 41, 42 (2003) (adopting dissenting opinion from our Court at 149 N.C. App. 74 (2002)). *See also State v. Royall*, 14 N.C. App. 214, 219

(1972) (concluding trial court properly instructed jury it could find a defendant was not under the influence of alcohol despite a positive breathalyzer result).

We reiterate the record does not show *the type* of substance Defendant ingested *on the morning of the hearing*. *See Willey*, 357 N.C. at 42 (recognizing that one can test positive well after its impairing effects have subsided).

In sum, there is no evidence in the record to support the trial court's finding that Defendant represented he would not test positive for an impairing substance. He merely represented he was of clear mind and understood the nature of the proceedings, notwithstanding that he had previously ingested a substance.

We note the trial judge also referenced in his order that Defendant caused the trial proceedings to be delayed a few hours waiting for Defendant to complete his urine sample. However, Defendant's failure to provide a urine sample quicker cannot be the basis of *direct* criminal contempt, as Defendant's act in providing the sample took place outside the presence of the court. Also, there was no finding that Defendant acted willfully in failing to provide the sample quicker than he did. *See Bank of Zebulon v. Chamblee*, 188 N.C. 417, 418 (1924) (holding that an act is not contemptuous unless it is done willfully).

## III. Conclusion

We conclude the record does not support the order holding Defendant in *direct* criminal contempt. Accordingly, we reverse that judgment and remand for further proceedings.

REVERSED.

Judges HAMPSON and FREEMAN concur.